NOTICE
Decision filed 10/27/14. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2014 IL App (5th) 130342

NO. 5-13-0342

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Washington County. |
| | ) | |
| v. | ) | No. 12-DT-28 |
| | ) | |
| JAKE P. ARMER, | ) | Honorable |
| | ) | Daniel J. Emge, |
| Defendant-Appellee. | ) | Judge, presiding. |

_____

JUSTICE CATES delivered the judgment of the court, with opinion.
Presiding Justice Welch and Justice Chapman concurred in the judgment and opinion.

**OPINION**

¶ 1    The defendant, Jake P. Armer, was charged with driving while under the influence of alcohol in violation of sections 11-501(a)(1) and (2) of the Illinois Vehicle Code (Code) (625 ILCS 5/11-501(a)(1), (2) (West 2012)). He filed a motion to suppress the results of a blood-alcohol analysis on grounds that his blood was drawn without his consent, without a warrant, and in the absence of exigent circumstances which would excuse the arresting officer from obtaining a search warrant. Following an evidentiary hearing, the trial court found that the arresting officer was not faced with exigent circumstances that would justify acting without a warrant, and it granted the defendant's

1

motion to suppress. The State filed a certificate of impairment and appealed. On appeal, the State claims that the trial court erred in finding that there was no exigency and in granting the defendant's motion to suppress, where the arresting officer could have reasonably believed that the time delay attendant to processing the motor vehicle accident and transporting the defendant to a hospital would lead to the destruction of evidence, namely the dissipation of alcohol from the defendant's blood. We affirm.

¶ 2    The appeal was filed pursuant to Illinois Supreme Court Rule 604(a)(1) (eff. Jan. 1, 2013), and challenges the circuit court's order suppressing the results of a blood-alcohol analysis in a DUI case. Joshua Cross, a Washington County sheriff's deputy, was called by the defendant and was the only witness to testify at the suppression hearing. A summary of his testimony follows.

¶ 3    Deputy Cross testified that he was dispatched to a rollover accident at 11:25 p.m. on June 30, 2012. He arrived at the scene at 11:35 p.m., and another officer, Corporal Bauer, pulled up moments later. Upon arrival, Deputy Cross observed a damaged vehicle. It had rolled over and was in a ditch. He also observed a man, later identified as the defendant, who was bloody, but walking around. An ambulance responded to the scene and transported the defendant to a hospital for evaluation. Deputy Cross followed the ambulance to the hospital, while Corporal Bauer remained at the scene. The ambulance departed the scene at 12:08 a.m. on July 1, 2012, and arrived at the hospital at 12:30 a.m. Another officer arrived at the hospital at 12:44 a.m., and remained there until 1:10 a.m.

¶ 4    While at the hospital, Deputy Cross charged the defendant with driving while

under the influence of alcohol in violation of section 11-501(a)(2) of the Code. The citation was issued at 12:45 a.m. Deputy Cross then read the "Warning to Motorist" to the defendant. Deputy Cross testified that the defendant fell asleep as the warning was being read to him. He attempted to wake the defendant, but was unable to rouse him. After reading the warning to the sleeping defendant, Deputy Cross requested the hospital staff to draw the defendant's blood with a DUI kit. The blood draw was completed at 1:15 a.m., and it was delivered to the police laboratory for analysis. The results revealed a blood-alcohol concentration of .159.

¶ 5    Upon receiving the results of the blood draw, Deputy Cross issued a second citation, charging the defendant with driving under the influence of alcohol in violation of section 11-501(a)(1) of the Code. Deputy Cross prepared a sworn report which advised the defendant that his driving privileges would be revoked for a minimum of 12 months based on the results of the blood-alcohol analysis. In the report, Deputy Cross stated that he had reasonable grounds to believe that the defendant was driving under the influence. He noted that the defendant was involved in a traffic crash, his eyes were bloodshot and glassy, there was an odor of an alcoholic beverage, his speech was slurred, and the defendant indicated he was "drunk."

¶ 6    Deputy Cross acknowledged that the defendant had not given verbal consent for the blood draw. He stated that according to his training, there is implied consent if a suspect does not refuse testing. Deputy Cross testified that he did not attempt to contact the State's Attorney or a judge to request a search warrant before he directed the hospital staff to draw the defendant's blood. He stated that the hospital is about one mile from the

3

sheriff's department and that the courthouse is 200 to 300 feet from the sheriff's department.

¶ 7    During cross-examination by the prosecutor, Deputy Cross testified that he did not consider calling the State's Attorney because of the late hour, and because he was confident that he had enough probable cause to make the arrest and "didn't need her assistance."  He did not feel this was a situation where a warrant needed to be issued under the implied consent law.

¶ 8    At the close of the testimony, the defendant argued that his blood was drawn without his consent and without a warrant, and that the State failed to establish that the police were faced with exigent circumstances which would have excused them from securing a warrant before ordering the blood draw.  The defendant asserted that the blood draw was an unreasonable seizure that violated his rights under the fourth amendment to the United States Constitution (U.S. Const., amend. IV), and he asked that the results of the blood-alcohol analysis be excluded from evidence in the criminal trial.

¶ 9    After considering the testimony and the totality of the circumstances, the trial court found that Deputy Cross was not faced with an emergency that justified acting without a warrant, that the defendant did not consent to the blood draw, and that the blood draw violated the defendant's rights under the United States Constitution and the Illinois Constitution.  The court granted the defendant's motion to suppress and prohibited the State from introducing the results of the blood-alcohol analysis during the trial.

¶ 10    On appeal, the State contends that the trial court erred in suppressing the results of the blood-alcohol analysis.  The State argues that there was an exigent circumstance

4

permitting the warrantless drawing of the defendant's blood in that the arresting officer could have reasonably believed that the time delay attendant to processing the motor vehicle accident and transporting the defendant to a hospital would lead to the destruction of evidence, namely the dissipation of alcohol from the defendant's blood.

¶ 11   The fourth amendment protects the people from unreasonable searches and seizures by the State.  U.S. Const., amend. IV.  The act of drawing blood from a person is considered a form of a seizure, and ordinarily requires a warrant, unless there are exigent circumstances that make obtaining a warrant impractical.  See *Missouri v. McNeely*, ___ U.S. ___, ___, 133 S. Ct. 1552, 1560-63 (2013); *Schmerber v. California*, 384 U.S. 757, 769-70 (1966).  Exigent circumstances have been found to exist in situations where the time needed to obtain a warrant would result in the destruction of evidence.  *Schmerber*, 384 U.S. at 770-72.  In determining whether exigent circumstances justified a warrantless search, the totality of the circumstances must be evaluated on a case-by-case basis.  *McNeely*, ___ U.S. at ___, 133 S. Ct. at 1559; *Schmerber*, 384 U.S. at 770-72.

¶ 12   In *Schmerber*, the Supreme Court upheld the admission into evidence of the results of a nonconsensual, warrantless blood draw from an individual who had been involved in a traffic accident and was suspected of driving under the influence of alcohol based on the "special facts" of that case.  *Schmerber*, 384 U.S. at 770-71.  The "special facts" included the time delays attendant to investigating the traffic accident and transporting the defendant to the hospital.  The Supreme Court concluded that given the totality of the circumstances, the police officer might have reasonably believed that he was confronted with an emergency in which further delay in seeking out a magistrate and

5

obtaining a warrant for a blood draw threatened the destruction of the blood-alcohol evidence. *Schmerber*, 384 U.S. at 770-72.

¶ 13    In *Missouri v. McNeely*, the Supreme Court reaffirmed its holding that the presence of exigent circumstances justifying a warrantless search must be determined after considering the totality of the circumstances in the particular case at bar.   See *McNeely*, ___ U.S. at ___, 133 S. Ct. at 1558.   In *McNeely*, the Supreme Court considered whether the natural dissipation of alcohol in the blood stream constituted a *per se* exigency that would justify a nonconsensual, warrantless blood draw.  *McNeely*, ___ U.S. at ___, 133 S. Ct. at 1558.  The Court held that the natural dissipation of alcohol does not create a *per se* exigency that would categorically justify an exception to the fourth amendment's warrant requirement for nonconsensual blood testing in drunk-driving cases.  *McNeely*, ___ U.S. at ___, 133 S. Ct. at 1563.  The Court noted that the natural dissipation of alcohol may support a finding of an exigency in a specific case, where other factors, such as the procedures in place for obtaining a warrant and the availability of a judge, may affect whether the police can obtain a warrant within a time frame that preserves the opportunity to obtain reliable evidence.  *McNeely*, ___ U.S. at ___, 133 S. Ct. at 1568.  The Court concluded that a nonconsensual, warrantless blood draw could not be justified without a showing that the exigencies of a situation made a warrantless search imperative, and it upheld the suppression of the evidence.  *McNeely*, ___ U.S. at ___, 133 S. Ct. at 1568.

¶ 14    After reviewing the totality of the circumstances in the record before us, we do not find that the arresting officer was faced with exigent circumstances that would justify the

6

drawing of the defendant's blood without a warrant. In this case, the defendant was involved in a single-vehicle accident. He sustained some injuries and was taken by ambulance to the hospital for evaluation. Deputy Cross followed the ambulance to the hospital, and Corporal Bauer remained at the scene. Another officer arrived at the hospital just after Deputy Cross. In this case, the record shows that while there may have been some delay attendant to securing the accident scene and transporting the defendant to the hospital, three officers were available to assist with the investigation. Deputy Cross did not work this accident by himself. He, or one of the other officers, could have attempted to contact the State's Attorney to secure a search warrant. Nothing in the record suggests any circumstances which would have prevented one of the officers from attempting to secure a warrant. There is no evidence that the officers would have faced an unreasonable delay in securing a warrant. In this case, Deputy Cross admitted that he did not attempt to secure a warrant. He stated that he did not believe he needed a warrant in this case because he had probable cause and because of the implied consent law. Additionally, Deputy Cross never stated that he believed he was faced with an emergency where the time delay in obtaining a warrant would threaten the loss of crucial evidence.

¶ 15   In this case, the record does not support the State's position that an arresting officer might have reasonably believed that he was faced with an exigency that would justify the warrantless blood draw. Upon considering the totality of the circumstances in this record, we conclude that the warrantless blood draw violated the defendant's fourth amendment right to be free from unreasonable searches. The trial court did not err in granting the defendant's motion to suppress the results of the blood-alcohol analysis and

prohibiting the State from offering that evidence at trial.

¶ 16   Accordingly, the order of the circuit court is affirmed, and the cause is remanded for further proceedings.


¶ 17   Affirmed; cause remanded.

2014 IL App (5th) 130342

NO. 5-13-0342

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

THE PEOPLE OF THE STATE OF ILLINOIS,      )     Appeal from the
                                          )     Circuit Court of
    Plaintiff-Appellant,                  )     Washington County.
                                          )
v.                                        )     No. 12-DT-28
                                          )
JAKE P. ARMER,                            )     Honorable
                                          )     Daniel J. Emge,
    Defendant-Appellee.                   )     Judge, presiding.
_____

**Opinion Filed:**        October 27, 2014
_____

**Justices:**        Honorable Judy L. Cates, J.

                Honorable Thomas M. Welch, P.J., and
                Honorable Melissa A. Chapman, J.,
                Concur
_____

**Attorneys**      Hon. Heath Hooks, State's Attorney, Washington County
**for**           Courthouse, Nashville, IL 62263
**Appellant**

                Patrick Delfino, Director, Stephen E. Norris, Deputy Director,
                Patrick D. Daly, Staff Attorney, Office of the State's Attorneys
                Appellate Prosecutor, Fifth District Office, 730 E. Illinois Hwy 15,
                Suite 2, P.O. Box 2249, Mt. Vernon, IL 62864
_____

**Attorneys**      Michael J. Pelletier, State Appellate Defender, Ellen J. Curry,
**for**           Ellen J. Curry, Deputy Defender, Lawrence J. O'Neill, Assistant
**Appellee**     Appellate Defender, Office of the State Appellate Defender, Fifth
                Judicial District, 909 Water Tower Circle, Mt. Vernon, IL 62864
_____