# Illinois Official Reports

## Supreme Court

---

### *People v. Brooks*, 2017 IL 121413

---

| | |
|---|---|
| Caption in Supreme Court: | THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. MICHAEL BROOKS, Appellee. |
| Docket No. | 121413 |
| Filed | November 30, 2017 |
| Decision Under Review | Appeal from the Appellate Court for the Fifth District; heard in that court on appeal from the Circuit Court of Effingham County, the Hon. Stanley Brandmeyer, Judge, presiding. |
| Judgment | Appellate court judgment reversed. Circuit court judgment reversed. Cause remanded. |
| Counsel on Appeal | Lisa Madigan, Attorney General, of Springfield, and Bryan M. Kibler, State's Attorney, of Effingham (David L. Franklin, Solicitor General, Michael M. Glick and Leah M. Bendik, Assistant Attorneys General, of Chicago, and Patrick Delfino, David J. Robinson, and Jennifer Camden, of State's Attorneys Appellate Prosecutor's Office, of Mt. Vernon, of counsel), for the People. |
| | H. Kent Heller and Bryant Hitchings, of Heller, Holmes & Associates P.C., of Mattoon, for appellee. |

Justices           JUSTICE BURKE delivered the judgment of the court, with opinion.

Chief Justice Karmeier and Justices Freeman, Thomas, Kilbride, Garman, and Theis concurred in the judgment and opinion.

**OPINION**

¶ 1       The defendant, Michael Brooks, was charged with driving under the influence following a single-vehicle motorcycle accident. He filed a motion to suppress the results of blood-alcohol testing on the ground that the blood draw performed at the hospital after his accident was a governmental search conducted in violation of the fourth amendment.

¶ 2       The circuit court granted defendant's motion, and the appellate court affirmed (2016 IL App (5th) 150095-U). We allowed the State's petition for leave to appeal. Ill. S. Ct. R. 315 (eff. Mar. 15, 2016). For the reasons that follow, we reverse the judgments of the lower courts.

¶ 3                                 Background

¶ 4       Defendant was charged in the circuit court of Effingham County with driving under the influence (DUI) (625 ILCS 5/11-501(a)(2) (West 2014)) following a single-vehicle motorcycle accident on August 14, 2014. On October 30, 2014, defendant filed a motion to suppress the results of a blood-alcohol analysis that was performed at St. Anthony's Memorial Hospital (St. Anthony's) on the night of the accident.

¶ 5       In his motion, defendant briefly alleged that, after the accident, police officers forcibly "placed him in an ambulance and sent him to the hospital," even though he had refused medical treatment. Citing *People v. Armer*, 2014 IL App (5th) 130342, the motion asserted that a blood draw subsequently performed at the hospital was a governmental search conducted without a warrant, without his consent, and in the absence of exigent circumstances. Thus, according to the motion, the blood draw violated defendant's fourth amendment right to be free from an unreasonable search. Defendant's motion did not challenge the legality of the police officers' seizure of defendant when he was forced to go to the hospital. Rather, the motion contended only that the blood draw performed at the hospital was an unlawful search.

¶ 6       On December 9, 2014, while defendant's motion was pending, the State issued a subpoena *duces tecum* to St. Anthony's directing it to produce "[a]ll lab results ('blood work')" originating from defendant's admission on or about August 14, 2014. The subpoena requested that the hospital produce the results of defendant's blood work in a sealed, clearly marked envelope and send it to the Effingham County circuit clerk. A docket entry reflects the court received a sealed envelope from the hospital on December 12, 2014.

¶ 7       Three days later, an evidentiary hearing was held on defendant's motion to suppress. At the start of the hearing, the circuit court noted it was in possession of an envelope from St. Anthony's but that it had not been opened. Defendant's counsel told the court he presumed the contents of the envelope were the subject matter of the motion to suppress. The State responded that it, too, presumed the envelope contained the results of medical blood work done on defendant when he went to the hospital. The parties, however, did not stipulate to the contents of the envelope, and the court did not open it. The hearing then began.

¶ 8   Defendant called police officer Thomas Webb from the Effingham police department. Webb testified that, on August 14, 2014, at approximately 11:54 p.m., he was dispatched to the scene of a single-vehicle motorcycle accident. When he arrived, Webb observed a motorcycle on a bush in the front yard of a house. He also saw an open-top Jeep across the street, approximately 100 feet from the motorcycle, where three other Effingham police officers were gathered. Webb walked across the street to the Jeep, which did not belong to defendant, and observed defendant sitting in the passenger seat with the door closed. Although none of the officers had seen defendant operating a motor vehicle, two witnesses who were present informed Webb defendant had been driving the motorcycle.

¶ 9   Webb spoke to defendant and, while doing so, noticed defendant's speech was slurred, his eyes were red, and he had an odor of alcohol emitting from his mouth when he spoke or yelled at the police. According to Webb, defendant appeared agitated by the presence of law enforcement. Webb believed defendant's leg was broken because his foot was "almost upside down." Webb admitted he had little medical training and defendant was not bleeding, but he believed the injury was serious. When Webb asked defendant if he wanted to go to the hospital, defendant refused. Webb was concerned about defendant's safety, as he appeared to not be thinking rationally because he was screaming and swearing at the police.

¶ 10   Emergency medical services (EMS) personnel who were present at the scene told Webb defendant needed to go to the hospital and requested Webb's assistance in getting him there. Although defendant continued to decline medical services, Webb ordered defendant out of the Jeep. Defendant refused. Thereafter, Webb and another officer physically removed defendant from the Jeep, placed him on a gurney, and assisted EMS personnel in putting the gurney into the ambulance.

¶ 11   Webb reiterated that it was EMS personnel who wanted defendant to get medical treatment and that he did not direct anyone to treat defendant. When asked why defendant was removed from the Jeep and forced to go to the hospital, Webb testified: "I briefly spoke with EMS and asked them if he was going to be transported to the hospital by them. Whenever a subject is intoxicated and a serious injury pursues, a lot of times or all the time in that case, ambulance services request or order basically that we assist them in removing a subject or putting them on the cot and transporting them to the hospital to make sure they get the medical attention that they need." Webb was not in the ambulance when EMS personnel began transporting defendant to the hospital.

¶ 12   Webb testified that the ambulance stopped after traveling one or two blocks because defendant was trying to get out. EMS personnel again asked the police to help in transporting defendant. Webb stated that he was concerned at this time for the safety of EMS personnel, defendant, and himself. Webb placed defendant on the gurney, handcuffed him, and rode in the ambulance the rest of the way to the hospital. Webb then assisted EMS personnel in taking defendant into the emergency room.

¶ 13   At the hospital, Webb read the statutory "Warning to Motorists" to defendant and asked him to consent to blood or breath testing. Defendant refused. At that point, Webb issued defendant a citation for DUI. Webb stated he did not take a sample of defendant's blood nor did he direct anyone at the hospital to do so. While Webb observed nurses working on defendant, he never spoke to them or any doctor. Webb stated he had no further contact with

the hospital after he left and did not know whether defendant ever gave consent for a blood draw.

¶ 14 Defendant then testified. Defendant briefly stated that, at the hospital, he never consented to have his blood drawn. Every time he was asked to have his blood drawn, he refused. Medical staff set his leg, which was broken. Altogether, defendant stated he spent approximately 12 hours at the hospital.

¶ 15 Defendant rested, and the State called no witnesses. After hearing arguments, the circuit court took the matter under advisement and retained the sealed envelope from St. Anthony's. Approximately one month later, the circuit court issued an order granting defendant's motion to suppress. Citing *Armer*, 2014 IL App (5th) 130342, the court concluded that a blood draw performed on defendant at St. Anthony's was a governmental search that had been conducted without his consent and that "the State failed to prove exigent circumstances were present to obtain a blood draw from Defendant absent a warrant."

¶ 16 Thereafter, the State filed a motion to reconsider. During a hearing on the motion, the State maintained that defendant had failed to prove that his blood had, in fact, been drawn at the hospital, as there was no evidence introduced at the hearing on the motion to suppress which established that fact. In addition, the State asserted that, even assuming defendant's blood was drawn, there was no fourth amendment violation because any blood draw performed at the hospital was a private search, not a governmental one, and thus there was no state action.

¶ 17 The circuit court rejected the State's arguments. The court stated that under the circumstances, there was "some apparent agency" between the hospital and Webb and concluded that "the argument that somehow the State wasn't responsible for the blood draw appears to me to be a form over substance argument." Therefore, the court declined to modify its original order. The State filed a certificate of impairment and appealed (Ill. S. Ct. R. 604(a)(1) (eff. Dec. 11, 2014)). The appellate court affirmed. 2016 IL App (5th) 150095-U.

¶ 18 The appellate court first rejected the State's argument that defendant had failed to prove any blood draw was actually performed. The court explained that defendant filed a motion to suppress and "both parties proceeded to argue the merits of the underlying motion, with the understanding a blood draw had been performed on the defendant." *Id.* ¶ 17.

¶ 19 The appellate court then addressed the State's argument that the blood draw was a private search and not the result of state action. *Id.* ¶¶ 21-22. The court emphasized that, despite defendant's refusal of medical treatment, Webb physically removed defendant from the Jeep, forcibly placed him on a gurney and into the ambulance, handcuffed him, rode to the hospital, and then assisted EMS personnel in delivering defendant to the emergency room. *Id.* ¶ 21. According to the appellate court, this was "ample evidence" that demonstrated "that the State participated in forcing defendant to receive medical treatment." *Id.* The appellate court also noted that there were no exigent circumstances present. *Id.* ¶ 24. From this, the court concluded that "the warrantless blood draw violated defendant's fourth amendment right to be free from an unreasonable search." *Id.* ¶ 25. This appeal followed.

¶ 20                                                    Analysis

¶ 21 At issue before us is the correctness of the circuit court's order granting defendant's motion to suppress. In reviewing a trial court's ruling on a motion to suppress evidence, we apply a two-part standard of review. *People v. Cosby*, 231 Ill. 2d 262, 270-71 (2008). Under this

standard, a circuit court's factual findings are reversed only if they are against the manifest weight of the evidence, while the court's ultimate legal ruling as to whether suppression is warranted is reviewed *de novo*. *Id.* at 271.

¶ 22    When a defendant files a motion to suppress evidence, he bears the burden of proof at a hearing on that motion. *People v. Gipson*, 203 Ill. 2d 298, 306 (2003); 725 ILCS 5/114-12(b) (West 2016) ("The judge shall receive evidence on any issue of fact necessary to determine the motion and the burden of proving that the search and seizure were unlawful shall be on the defendant."). A defendant must make a *prima facie* case that the evidence was obtained by an illegal search or seizure. *Gipson*, 203 Ill. 2d at 306-07. A *prima facie* showing means that the defendant has the primary responsibility for establishing the factual and legal bases for the motion to suppress. *People v. Berg*, 67 Ill. 2d 65, 68 (1977). Where the basis for the motion is an allegedly illegal search, the defendant must establish both that there was a search and that it was illegal. *Id.* If a defendant makes a *prima facie* case, the burden shifts to the State to present evidence to counter the defendant's *prima facie* case. *Gipson*, 203 Ill. 2d at 307. However, the ultimate burden of proof remains with the defendant. *Id.*

¶ 23    The sole allegation raised in defendant's motion to suppress is that his fourth amendment right to be free from an unreasonable search was violated by a blood draw conducted at St. Anthony's. The State contends on appeal that the circuit court erred in holding that defendant established a *prima facie* case that any blood draw conducted at the hospital was an illegal search. We agree with the State.

¶ 24    To make a *prima facie* case for suppression, defendant had to establish two things: first, that a search occurred in the form of a blood draw and, second, that the draw violated the fourth amendment. Defendant failed to establish either of these propositions.

¶ 25    Defendant presented no evidence that his blood was actually drawn at the hospital. Although this was a matter within his personal knowledge, defendant never testified that he was subjected to a blood draw. Instead, he stated only that he refused to consent to having his blood drawn. Officer Webb testified that he went with defendant to the hospital and observed nurses working on him but stated he had no knowledge of whether a blood draw took place and no knowledge as to whether defendant ever consented to have his blood drawn. In addition, defendant did not call any witnesses from the hospital to testify that a blood draw was performed. Further, while an envelope was sent to the circuit court from St. Anthony's, the parties did not stipulate to its contents, and it was never opened. Thus, no evidence was presented at the suppression hearing that a blood draw was actually performed at the hospital.

¶ 26    We cannot agree with the appellate court that, because defendant filed a motion to suppress evidence and the parties proceeded to argue the motion as if a blood draw was performed, defendant, in fact, established that a search took place. The mere filing of a motion is not proof that a search occurred. Defendant bore the burden at the suppression hearing of showing his blood was drawn but failed to offer any evidence to establish that fact. Accordingly, we conclude defendant failed to establish the first element of his *prima facie* case.

¶ 27    Moreover, even assuming a blood draw took place, defendant failed to establish any fourth amendment violation. The fourth amendment to the United States Constitution (U.S. Const., amend. IV) protects the "right of the people to be secure *** against unreasonable searches and seizures." There is no dispute that a blood draw is a search within the meaning of the fourth amendment. See, *e.g.*, *Schmerber v. California*, 384 U.S. 757, 769-70 (1966); *Missouri v.*

*McNeely*, 569 U.S. 141, 148 (2013). A search conducted without a warrant is considered *per se* unreasonable under the fourth amendment unless it falls within one of a limited number of exceptions to the warrant requirement. *People v. Pitman*, 211 Ill. 2d 502, 513 (2004). No warrant was issued in this case, and the State does not contend that any exception to the warrant requirement is applicable.

¶ 28     However, the constitutional prohibition "against unreasonable searches and seizures does not apply to searches or seizures conducted by private individuals." *People v. Heflin*, 71 Ill. 2d 525, 539 (1978) (citing *Burdeau v. McDowell*, 256 U.S. 465 (1921)). Where a person performs a search independently of the police, the search is considered a private one, and because state action is not present, the fourth amendment is not implicated. See generally 1 Wayne R. LaFave, LaFave Search and Seizure § 1.8, at 356-57 (5th ed. 2012).

¶ 29     Defendant's argument in this case rests on the presumption that any blood draw conducted at the hospital was a governmental search, not a private one.

> "The relevant factors involved in determining whether or not a particular search should be attributed to the government have been frequently discussed by the Supreme Court of the United States. [Citation]. Where a search is conducted by a private individual, the search will be subject to constitutional guarantees when the individual conducting the search can be regarded as acting as an agent or instrument of the State 'in light of all the circumstances of the case.' (*Coolidge v. New Hampshire* (1971), 403 U.S. 443, 487 ***). Participation by the police in and of itself, then, does not automatically invoke the application of the guarantees against unreasonable government intrusions safeguarded by the fourth and fourteenth amendments." *Heflin*, 71 Ill. 2d at 539-40.

¶ 30     Thus, to establish a fourth amendment violation in this case, defendant had to demonstrate, "in light of all the circumstances," that the private individual who conducted the alleged blood draw acted as an agent or instrumentality of the State when doing so. Defendant did not meet this standard.

¶ 31     Officer Webb testified he never asked anyone to draw blood. In fact, Webb stated he never spoke to any nurse or doctor and had no knowledge about the treatment defendant received. Thus, there was no evidence that Webb, or any other police officer, sought or encouraged a blood draw or was even aware that one had been done. *Cf. Armer*, 2014 IL App (5th) 130342 (state action was present where a police officer requested that hospital staff draw the defendant's blood with a DUI kit). Further, and equally as important, defendant did not call any witnesses from the hospital to testify. Thus, there was no evidence that any individual who may have drawn defendant's blood did so while acting at the behest, or under the influence, of the police.

¶ 32     The appellate court below stressed the fact that defendant was physically forced to go the hospital and reasoned that, because defendant was compelled to go to the hospital, then any hospital employee who drew defendant's blood necessarily did so under the guise of state action. This analysis is misplaced.

¶ 33     There is no question police forcibly seized defendant and helped transport him to the hospital. But defendant has never challenged the legality of the seizure. His challenge is only to the legality of a search, *i.e.*, the blood draw that allegedly took place at St. Anthony's. And, on

this record, there is no evidence that a blood draw even took place, let alone that a hospital employee was acting as an instrumentality or agent of police when it was performed.

¶ 34 Defendant also emphasizes that he had a right to refuse medical treatment and that he never consented to any blood draw. Therefore, defendant reasons, any hospital personnel who drew his blood acted illegally, and any blood draw was necessarily unlawful under the fourth amendment. This argument is without merit. The private search doctrine applies " 'to a search or seizure, *even an unreasonable one*, effected by a private individual not acting as an agent of the Government or with the participation or knowledge of any governmental official.' " (Emphasis added.) *United States v. Jacobsen*, 466 U.S. 109, 113 (1984) (quoting *Walter v. United States*, 447 U.S. 649, 662 (1980) (Blackmun, J., dissenting, joined by Powell and Rehnquist, JJ.)); see also, *e.g.*, *United States v. Malbrough*, 922 F.2d 458, 462-63 (8th Cir. 1990) (upholding a search by a private citizen who trespassed on another person's property and viewed marijuana).

¶ 35 Based on the foregoing, we conclude that, even assuming blood was drawn from defendant at St. Anthony's, it was a private search that did not implicate the fourth amendment. Accordingly, for this additional reason, the circuit court erred in granting defendant's motion to dismiss.

¶ 36 Finally, we note that at the conclusion of the hearing held on the State's motion to reconsider the circuit court's suppression order, the circuit court briefly stated that it believed the State should not have been able to issue a subpoena *duces tecum* to St. Anthony's. The court evidently concluded that, because any blood draw was the result of state action, the subpoena was improper. However, as we have explained, on this record, defendant failed to establish that any blood draw was conducted under the guise of state action.

¶ 37 Conclusion

¶ 38 For the foregoing reasons, we hold the circuit court erred in granting defendant's motion to suppress. Accordingly, we reverse the judgments of the circuit and appellate courts. The cause is remanded to the circuit court for further proceedings consistent with this opinion.

¶ 39 Appellate court judgment reversed.

¶ 40 Circuit court judgment reversed.

¶ 41 Cause remanded.