2021 IL App (2d) 190635-U
No. 2-19-0635
Order filed October 25, 2021

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(l).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Du Page County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 15-CF-544 |
| HILARIO SANCHEZ AGRIPINO, | ) ) | Honorable Jeffrey S. MacKay, |
| Defendant-Appellant. | ) | Judge, Presiding. |

PRESIDING JUSTICE BRIDGES delivered the judgment of the court.
Justices Hudson and Birkett concurred in the judgment.

**ORDER**

¶ 1    *Held*: Defendant's motion to quash arrest and suppress evidence was properly denied where (1) under the "knock and talk" doctrine, the police officer's entry onto defendant's driveway to speak with him was not a search; and (2) the officer did not seize defendant before developing probable cause to arrest him for driving under the influence of alcohol.

¶ 2    Defendant, Hilario Sanchez Agripino, appeals from his convictions of multiple driving offenses. He contends that the trial court erred in denying his motion to quash his arrest and suppress evidence. Defendant was arrested for driving under the influence of alcohol (DUI) (see 625 ILCS 5/11-501 (West 2014)) during an encounter with a police officer on the driveway of

defendant's home. Defendant argues that the driveway was within the curtilage of his home and, thus, the officer was not lawfully present, as he lacked a warrant and there were no exigent circumstances to justify a warrantless entry. Defendant further argues that, even if the driveway was "public property," his arrest for DUI was still improper in that the officer unlawfully seized him before developing probable cause for a DUI arrest. We hold that (1) the officer's entry onto the curtilage was not a "search" for fourth amendment purposes, and thus needed no justification, as the officer was exercising the same right to enter the curtilage as would a member of the public; and (2) the officer did not seize defendant before developing probable cause to arrest him for DUI. Consequently, we affirm.

¶ 3                                        I. BACKGROUND

¶ 4      On March 14, 2015, defendant was arrested for DUI. He was later indicted on four counts: aggravated driving while under the influence of alcohol (ADUI), sixth or subsequent violation (count I) (625 ILCS 5/11-501(a)(2), (d)(2)(E) (West 2014)); ADUI, fifth or subsequent violation (count II) (625 ILCS 5/11-501(a)(2), (d)(2)(D) (West 2014)); driving with a revoked license (count III) (625 ILCS 5/6-303(a), (d-3) (West 2014)); and ADUI (blood alcohol concentration of 0.08 or more), sixth or subsequent violation (count IV) (625 ILCS 5/11-501(a)(1), (d)(1)(A), (d)(2)(E) (West 2014)).

¶ 5      Defendant filed a "motion to quash stop and arrest and suppress evidence." The motion was essentially generic and did not specify how the actions by the police violated the fourth amendment (U.S. Const., amend. IV). In particular, the motion did not assert an illegal entry onto defendant's property.

¶ 6      At the suppression hearing, the parties offered no opening remarks. Defendant testified that, at around 8 p.m. on March 14, 2015, he was at home with his wife and children. He had drunk

six or seven cans of Miller Lite beer. He was in his living room when he noticed three police officers talking to each other in the street in front of his house. He went outside through his back door to close the door of his "station wagon," which was parked in his driveway toward the back of his house. One officer, who was out of his line of sight, "yelled" to him. Defendant "went to meet him to see what was going on." The officers asked for his name and identification, and he gave both. He declined to take field sobriety tests, and the officers arrested him. He agreed that he told an officer that he had been to a nearby Walgreens that evening, but he denied having said that he had driven there. He also claimed that he told an officer that he had been listening to music in his house; he denied having said that he was listening to music in his vehicle. He admitted that the key to the vehicle in his driveway—a gray Plymouth Voyager minivan—was in his back pocket when he spoke to the police.

¶ 7 Following defendant's testimony, the State moved for a directed finding. The court denied the motion.

¶ 8 The State then called Naperville police detective Tim Madden as its sole witness. Madden was a patrol officer in March 2015. He testified that, on the evening of March 14, 2015, he was dispatched in response to a witness report of a gray minivan that was being driven erratically and that had just been parked in the driveway at 128 West Aurora Avenue in Naperville. Madden arrived at that address about five minutes after he received the dispatch. He spoke briefly to the witness who had called in the complaint. The witness provided a partial license plate number—P32—for the minivan he had observed. The witness reported that the minivan was still in the driveway at 128 West Aurora Avenue. Madden parked his squad car "at the end of the driveway." He was asked, "When you initially pulled into the driveway, did you pull your vehicle into the driveway or did you just walk up the driveway?" He answered, "I did not go into the driveway."

From where he was parked, he could see a beige or gray minivan with a license plate number beginning P32 parked in the driveway near the back of the house.

¶ 9 As Madden walked up to the minivan, he saw "a male subject, brown coat, dark pants, exit [on] the driver's side." He identified defendant in court as the person who had exited the minivan. Upon getting out of the minivan, defendant walked toward the rear of the house. Madden described how he approached defendant:

> "Q. *** [D]id [you] ask him to stop and talk with you?
>
> A. Yes.
>
> Q. And he complied with that; is that correct?
>
> A. Correct.
>
> Q. Did he have to walk back towards you?
>
> A. Yes."

Defendant staggered as he walked. He approached Madden and spoke. Madden noticed that he had a "strong odor of alcohol on his breath," had "extremely glassy eyes, bloodshot, glassy, eyes," and "was slurring his speech." Defendant told Madden that he was home alone, had been listening to music in the vehicle, and had drunk five or six Miller Lites. He said that he had recently driven to Walgreens, but he quickly corrected himself to say that he had walked there. Madden felt the hood of the minivan and found that it was "very warm to the touch." Defendant consented to a horizontal gaze nystagmus test, but he declined to participate in other field sobriety tests. Madden concluded that defendant had been driving under the influence of alcohol and arrested him.

¶ 10 After Madden's testimony, the State argued that Madden's actions leading up to and including defendant's arrest were justified. The State pointed to the following facts: Madden's quick response to an eyewitness report of a minivan that was moving erratically in traffic before

parking in defendant's driveway; defendant's exit from the driver's seat of the minivan; his indicia of intoxication and his possession of the minivan key; his admission that he had recently driven to Walgreens; and the evidence that the minivan's engine was recently run. The State argued:

"And so taken [*sic*] all of the totality of the circumstances an[d] all the evidence that [Y]our Honor has and what the officer had at the time of the arrest, the officer had sufficient grounds, a reasonable suspicion to stop the vehicle even though it was in the driveway and probable cause to arrest the defendant based on his admission, the defendant's admission, based on the officer's observations and to dial the 9-1-1 call to place the defendant under arrest."

¶ 11 Defendant did not present argument. The court ruled as follows:

"Based on the evidence that's been presented, I do find under the totality of the circumstances that the officer did have probable cause to believe the defendant drove or was in actual physical control of the vehicle under the influence of alcohol. So the motion to quash is respectfully denied."

The court did not provide more specific reasons or make findings of fact.

¶ 12 The evidence at defendant's bench trial was largely consistent with the evidence at the suppression hearing. Jesus Hernandez, the witness who had called the police, testified that he had taken note of defendant's minivan when it nearly hit his vehicle when pulling ahead of him. Driving behind it, he observed several instances of erratic driving and decided to follow the minivan and call 911. When the minivan pulled into a driveway, Hernandez pulled into a parking lot. He did not recall speaking to officers. He drove away when the dispatcher told him that he could leave.

¶ 13    Madden described his interaction with defendant in essentially the same terms he used at the suppression hearing. We note, however, that while Madden testified at the suppression hearing that he "ask[ed] [defendant] to stop and talk with [him]," he testified at trial that he "told [defendant] to come talk to [him]." Madden testified at both proceedings that defendant "complied."

¶ 14    After hearing further evidence, including defendant's blood alcohol concentration on the night of his arrest, the court found defendant guilty of all charged offenses.

¶ 15    Defendant filed a motion for a new trial and later amended it. The amended motion focused primarily on the sufficiency of the evidence. Defendant did not explicitly argue that the court erred in denying the suppression motion. However, he did argue as follows:

> "At the time Madden went on [defendant's] property there was no 'hot pursuit' going down. Since [defendant] was on his own curtilage and property, Madden should have advised the defendant of his *Miranda* warnings, prior to administrating test [*sic*] and asking questions. In fact, he should have seeked [*sic*] a warrant to go on the premises."

Further, the information given by Hernandez was "not enough for police to charge onto private property." "It is urged [that the] testimony of Hernandez is not probable cause by the police to go on the property and curtilage of the owner without consent along with and advisement of his *Miranda* rights [*sic*]."

¶ 16    At the hearing on the motion, defense counsel argued as follows as to Madden's justification for entering defendant's property:

> "[O]ur position is that the testimony of Hernandez is not probable cause by the police to go on someone's property privilege [*sic*] of the owner without consent along with—without any advisement of *Miranda*."

¶ 17    The court denied the motion. Proceeding to sentencing, the court found that count IV merged into count I. The court sentenced defendant on counts I and II to two seven-year terms of imprisonment. The court imposed a two-year term of imprisonment on count III. All terms would be served concurrently. Defendant timely appealed.

¶ 18                                II. ANALYSIS

¶ 19    On appeal, defendant argues that the trial court erred in denying his motion to quash his arrest and suppress evidence. First, defendant contends that Madden, in approaching defendant on his driveway, unlawfully entered the home's curtilage, as Madden lacked a warrant and there were no exigent circumstances to justify the warrantless entry. Second, even if the driveway was "public property" and not the home's curtilage, defendant's arrest for DUI was still improper in that Madden unlawfully seized him before developing probable cause for the DUI arrest. According to defendant, he was seized from the point that Madden called him over to talk.

¶ 20    In response, the State does not dispute that Madden entered the home's curtilage, but it claims that the entry was lawful. The State relies on the " 'knock and talk' " doctrine (*Carroll v. Carman*, 574 U.S. 13, 15 (2014)), which holds that the fourth amendment is not implicated when a police officer enters the curtilage of a home and remains there to the same extent a homeowner might expect of a private citizen (see *Florida v. Jardines*, 569 U.S. 1, 8 (2013)).

¶ 21    The State further argues that Madden's encounter with defendant remained consensual until Madden arrested him for DUI. The State maintains that, when Madden called defendant over to talk, none of the factors in *United States v. Mendenhall*, 446 U.S. 544, 553 (1980), for judging when a person has been seized were present. According to the State, before any of the *Mendenhall* factors were present, Madden had probable cause to arrest defendant for DUI.

¶ 22    In his reply brief, defendant claims that the State has conceded that Madden entered the curtilage and thus "has also conceded this was a warrantless search within the meaning of the Fourth Amendment, and thus presumptively unreasonable." He further contends that the entry was not justified by the "knock and talk" doctrine, as Madden did not knock on defendant's door but approached him in his driveway. Finally, defendant asserts that the State's argument that Madden's encounter with defendant remained consensual until his arrest should be barred because it is inconsistent with its position in the trial court:

> "[D]uring the [hearing on the] motion to suppress, the State took the position that the officer actually stopped the Defendant's vehicle, and that the officer had the right to do so based on reasonable suspicion. That position below is inconsistent with its current position on appeal, and thus the State should be prohibited from taking its current position on this basis as well."

Defendant does not contest that, when Madden formally placed him under arrest, he had probable cause to do so.

¶ 23    In reviewing the trial court's decision on a suppression motion, we apply a two-part standard of review. *People v. Brooks*, 2017 IL 121413, ¶ 21. We reverse a trial court's factual findings only if they are against the manifest weight of the evidence. *Brooks*, 2017 IL 121413, ¶ 21. "This deferential standard is grounded in the reality that the circuit court is in a superior position to determine and weigh the credibility of the witnesses, observe the witnesses' demeanor, and resolve conflicts in their testimony." *People v. McDonough*, 239 Ill. 2d 260, 266 (2010). We review *de novo*, however, the trial court's "ultimate legal ruling" suppressing the evidence. *Brooks*, 2017 IL 121413, ¶ 21.

¶ 24 Because we review *de novo* the trial court's ultimate ruling, we may affirm on any basis appearing in the record, regardless of whether the trial court relied on that basis or whether its reasoning was correct. *People v. Johnson*, 208 Ill. 2d 118, 128-32 (2003). The reviewing court may consider evidence both from the trial and the suppression hearing. *People v. Eubanks*, 2019 IL 123525, ¶ 61.

> "When a defendant files a motion to suppress evidence, he bears the burden of proof at a hearing on that motion. [Citations.] A defendant must make a *prima facie* case that the evidence was obtained by an illegal search or seizure. [Citation.] A *prima facie* showing means that the defendant has the primary responsibility for establishing the factual and legal bases for the motion to suppress. [Citation.] Where the basis for the motion is an allegedly illegal search, the defendant must establish both that there was a search and that it was illegal. [Citation.] If a defendant makes a *prima facie* case, the burden shifts to the State to present evidence to counter the defendant's *prima facie* case. [Citation.] However, the ultimate burden of proof remains with the defendant. [Citation.]." *Brooks*, 2017 IL 121413, ¶ 22.

¶ 25 The fourth amendment to the United States Constitution guarantees the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const., amend. IV. "A 'search' occurs when 'an expectation of privacy that society is prepared to consider reasonable is infringed.' " *People v. Absher*, 242 Ill. 2d 77, 83 (2011) (quoting *United States v. Jacobsen*, 466 U.S. 109, 113 (1984)). "Consequently, '[o]fficial conduct that does not "compromise any legitimate interest in privacy" is not a search subject to the Fourth Amendment.' " *People v. Bartelt*, 241 Ill. 2d 217, 230 (2011) (quoting *Illinois v. Caballes*, 543 U.S. 405, 409 (2005) (quoting *Jacobsen*, 466 U.S. at 123)). On the other hand, "a 'seizure' occurs

when 'the police conduct would have communicated to a reasonable person that the person was not free to decline the officers' requests or otherwise terminate the encounter.' " *Bartelt*, 241 Ill. 2d at 226 (quoting *Florida v. Bostick*, 501 U.S. 429, 439 (1991)).

¶ 26    "[W]hen it comes to the Fourth Amendment, the home is first among equals." *Jardines*, 569 U.S. at 6. The same protections that apply to the home also apply to the curtilage, or the area " 'immediately surrounding and associated with the home.' " *Jardines*, 569 U.S. at 6 (quoting *Oliver v. United States*, 466 U.S. 170, 180 (1984)). A homeowner, however, is assumed to have granted an implied license for intrusion onto his property. "This implicit license typically permits the visitor to approach the home by the front path, knock promptly, wait briefly to be received, and then (absent invitation to linger longer) leave." *Jardines*, 569 U.S. at 8. This implied invitation "is generally managed without incident by the Nation's Girl Scouts and trick-or-treaters." *Jardines*, 569 U.S. at 8. An agent of the state may enter the curtilage of a dwelling to the same extent that private citizens are impliedly licensed to enter. *Jardines*, 569 U.S. at 8. "Thus, a police officer not armed with a warrant may approach a home and knock, precisely because that is 'no more than any private citizen might do.' " *Jardines*, 569 U.S. at 8 (quoting *Kentucky v. King*, 563 U.S. 452, 469 (2011)). "[I]t is not a Fourth Amendment search to approach the home in order to speak with the occupant, *because all are invited to do that.*" (Emphasis in original.) *Jardines*, 569 U.S. at 9 n.4; see *People v. Brandt*, 2019 IL App (4th) 180219, ¶ 34 ("A 'knock and talk,' when performed within its proper scope, is not a search for fourth amendment purposes.")

¶ 27    We address first defendant's argument that Madden's entry onto defendant's driveway was improper as Madden had no warrant. As defendant notes, the State does not dispute that the driveway was within the curtilage of defendant's home. Defendant considers this "an important concession because, once it is established that an officer invaded the curtilage of a defendant's

home, Fourth Amendment protection applies." Thus, according to defendant, just by conceding that Madden entered the curtilage of defendant's home, the State has "conceded this was a warrantless search within the meaning of the Fourth Amendment, and thus presumptively unreasonable." Defendant is mistaken. Clearly, a warrantless search of a home is presumptively unreasonable (*People v. McNeal*, 175 Ill. 2d 335, 344 (1997)), but the State does not concede that Madden's entry onto the curtilage to speak with defendant was a search. Rather, the State relies on the "knock and talk" doctrine to argue that those actions were *not* a search, and we agree with the State on this point.

¶ 28    Despite its name, the "knock and talk" doctrine does not limit an officer to knocking on the front door of the residence. Rather, the same license that permits an officer to approach a home's front door to speak to a resident who is inside likewise permits the officer to walk up the home's driveway and call out to a resident who is outside. Defendant, however, contends that, because a resident who is outside the home cannot avoid speaking to the officer, the license does not apply. Defendant's argument is misdirected. An officer has an implied license to enter the curtilage of a dwelling to the same extent that a member of the public does. Approaching a house by a driveway is as ordinary as approaching it by a front walk, especially when the person approaching believes that the resident may be outside. Defendant does not dispute this general proposition. In our view, Madden acted within the scope of his implied license to enter the property when he walked up the driveway and approached defendant. Madden's conduct while within the curtilage may be relevant to whether defendant was *seized*, but Madden did not effect a *search* simply by entering the curtilage and approaching defendant.

¶ 29    We turn, then, to defendant's alternative argument that, even if Madden was lawfully on the premises, he seized defendant without reasonable suspicion. We must address first, however,

defendant's assertion in his reply brief that the State's position on appeal—that Madden's encounter with defendant remained consensual preceding the DUI arrest—is inconsistent with its position at the suppression hearing. Defendant notes that "while a prevailing party may defend its judgment on any basis appearing in the record, it may not advance a theory or argument on appeal that is inconsistent with the position taken below." *People v. Denson*, 2014 IL 116231, ¶ 17. At the suppression hearing, the State concluded its argument as follows:

> "And so taken [*sic*] all of the totality of the circumstances an[d] all the evidence that your Honor has and what the officer had at the time of the arrest, *the officer had sufficient grounds, a reasonable suspicion to stop the vehicle* even though it was in the driveway and probable cause to arrest the defendant based on his admission, the defendant's admission, based on the officer's observations and to dial the 9-1-1 call to place the defendant under arrest." (Emphasis added.)

In these remarks, according to defendant, the State "took the position that the officer actually stopped the Defendant's vehicle, and that the officer had the right to do so based on reasonable suspicion." Since the minivan was already parked in the driveway when Madden arrived, defendant appears to mean that the State conceded that Madden "stopped" the parked minivan by blocking it in while defendant was still inside it. We do not read the State as making such a concession. In its argument preceded the quoted remarks, the State focused both on the significance of Hernandez's report to the dispatcher *and* on what Madden observed *after* he called out to defendant and approached him. In the quoted remarks, the State began by commenting on the "totality" of the evidence that Madden had gathered "at the time of the arrest." The State concluded by asserting that Madden had probable cause to arrest defendant based on the report to the dispatcher and Madden's observations. During these remarks, the State commented that "the

officer had sufficient grounds, a reasonable suspicion to the stop the vehicle even though it was in the driveway." We read the State as asserting that Madden could have justifiably stopped defendant's minivan—not as conceding that Madden did in fact do so. The State was making a rhetorical point: that Madden had developed such abundant grounds to suspect defendant of an offense that not only was the arrest lawful based on the entirety of what Madden then knew, but Madden could have justifiably detained defendant at an earlier point, based simply on the information from the dispatcher. Moreover, it is not clear why the State would make a concession that the evidence hardly compelled. Specifically, it is far from clear that Madden blocked the minivan with his squad car. He testified that he parked "at the end of the driveway," and he later clarified that he did not park *in* the driveway. The record is inconclusive whether Madden parked his squad car across the front of the driveway, thus blocking it. In any event, we conclude that the State's present position is not inconsistent with its position at the suppression hearing.

¶ 30    Moving to the substance of the seizure issue, we note that, under *Mendenhall*, 446 U.S. at 554, "[e]xamples of circumstances that might indicate a seizure, even where the person did not attempt to leave, would be the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." There was no evidence that Madden was accompanied by other officers, displayed a gun, or touched defendant at any point before arresting him. Nonetheless, in his reply brief, defendant asserts that Madden "took active steps to prevent [defendant] from retreating into his home." Specifically, Madden, "in full uniform[,] park[ed] his squad car on [defendant's] driveway, walk[ed] up toward the back of the driveway, then stop[ped] [defendant] as he [was] quickly attempting to go inside his home to

avoid speaking with [Madden]." We disagree with defendant that Madden's actions amounted to a seizure.

¶ 31    To start, defendant distorts the record in asserting that Madden parked his car "on" defendant's driveway. As noted, Madden specifically denied that he parked *on* the driveway, and the record is unclear whether he blocked the end of the driveway.

¶ 32    Also, Madden's being in full uniform and approaching defendant did not amount to a seizure. Defendant insinuates that the encounter was more potentially coercive because it occurred on the curtilage of his home. He cites no authority for the notion, which is an implausible one given that an officer may approach an individual sitting in a parked car without necessarily effecting a seizure. See *People v. Luedemann*, 222 Ill. 2d 530, 552 (2006).

¶ 33    We turn lastly to Madden's act of calling out to defendant. Defendant argues that he was "seized when [Madden] ordered him to return and [he] complied." The characterization, "ordered," is an overreach. The record is unclear on the point. "An officer calling a person over to the officer does not by itself necessarily constitute a seizure." *People v. Qurash*, 2017 IL App (1st) 143412, ¶ 26. As *Mendenhall* instructs, language and tone of voice are pertinent. See *Mendenhall*, 446 U.S. at 554. At the suppression hearing, defendant testified that Madden "yelled," but defendant did not describe what he yelled. Madden testified at the suppression hearing that he "ask[ed]" defendant to come over, while at trial he testified that he "told" defendant to come over. We hold the ambiguity in the record against defendant, who had the burden of proof on his suppression motion. Therefore, we cannot conclude that the trial court erred in denying defendant's motion.

¶ 34                                     III. CONCLUSION

¶ 35    For the reasons stated, we affirm the judgment of the circuit court of Du Page County.

¶ 36    Affirmed.