NOTICE
Decision filed 12/19/18. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2018 IL App (5th) 170427

NO. 5-17-0427

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | St. Clair County. |
| | ) | |
| v. | ) | No. 16-CF-1272 |
| | ) | |
| RICKY L. PRATT, | ) | Honorable |
| | ) | Robert B. Haida, |
| Defendant-Appellee. | ) | Judge, presiding. |

_____

JUSTICE CHAPMAN delivered the judgment of the court, with opinion.
Justices Welch and Goldenhersh concurred in the judgment and opinion.[*]

**OPINION**

¶ 1    The defendant, Ricky L. Pratt, was involved in an automobile accident. A detective investigating the accident directed medical personnel to draw the defendant's blood for chemical testing while he was unconscious. The defendant was subsequently charged with aggravated driving under the influence (aggravated DUI) (625 ILCS 5/11-501(d)(1)(F) (West 2014)). He filed a motion to suppress the test results, arguing that it constituted an unreasonable warrantless search in violation of the fourth amendment. The trial court agreed and granted the motion. The State appeals, arguing that (1) the court should have granted its motion for a directed finding because the defendant did not present evidence that the blood draw occurred at all and (2) the

_____

[*]Justice Goldenhersh fully participated in the decision prior to his retirement. See *Cirro Wrecking Co. v. Roppolo*, 153 Ill. 2d 6 (1992).

1

blood draw was a valid consensual search under the implied consent provisions in the Illinois Vehicle Code (*id.* §§ 11-501.1, 11-501.2, 11-501.6). We affirm the trial court's ruling.

¶ 2     On the night of March 9, 2016, the defendant was involved in a motor vehicle accident. The Ford Expedition he was driving struck a tractor trailer, causing extensive damage to the defendant's vehicle. Daniel Tutor, a passenger in the defendant's vehicle, died at the scene. The defendant sustained serious injuries to his face. Because the accident involved a fatality, numerous police officers were involved in the investigation. Detective John Vito Parisi, who was not on duty that night, was called in to work and reported to the scene of the accident. When he arrived at the scene, the chief of police of Sauget, Chief Jones, approached Detective Parisi's vehicle and directed him to go to St. Louis University Hospital, where the defendant was being treated, to obtain a blood sample for chemical testing. An emergency room nurse drew blood from the defendant at Detective Parisi's request. Detective Parisi brought the blood sample to the Illinois State Police crime lab, where it was tested for evidence of intoxication. The defendant was subsequently charged with aggravated DUI.

¶ 3     The defendant filed a motion to suppress the results of the blood test, arguing that it violated his right to be free from unreasonable searches under the fourth amendment to the United States Constitution (U.S. Const., amend. IV). At a hearing on the motion, the defendant testified that he was treated at St. Louis University Hospital for injuries sustained in a motor vehicle accident on March 9, 2016. He testified that he did not give any police officer permission to have his blood drawn while he was there. Asked if he spoke to any officers from the Sauget Police Department while he was in the hospital, the defendant testified that he did not remember even seeing any officers at the hospital. On cross-examination, the defendant testified that he did not remember having blood drawn that night. He explained that he was "out of it" that night and

2

noted that he lost enough blood that he required a blood transfusion.

¶ 4 After the defendant testified, the State moved for a directed finding. The prosecutor argued that pursuant to Illinois's "implied consent" statutes, "if an individual is unconscious," that individual is deemed to have given "implied consent to any kind of blood draw." The court took the matter under advisement. A few days later, the court entered an order denying the State's motion for a directed finding.

¶ 5 The hearing on the defendant's motion to suppress continued one month later. The court noted at the outset that it had denied the State's motion for a directed finding and that the burden had now shifted to the State to show that the warrantless blood draw was constitutionally permissible.

¶ 6 The first witness to testify for the State was Officer Scott Mundy of the Sauget Police Department. Officer Mundy testified that on the night of March 9, 2016, he and another officer, Renee Sherman, were dispatched to the scene of an accident on Illinois State Route 3 in Sauget. He explained that Officer Sherman was the primary officer on the case because it was her turn to take a call. He also explained that, because the accident involved a fatality, numerous officers responded, including Sauget Police Chief Jones and an accident reconstruction specialist from the Illinois State Police. Officer Mundy testified that he and Officer Sherman arrived at the scene at approximately the same time. Asked to describe what he observed when he arrived, Officer Mundy stated that he saw a white Ford Expedition with extensive front-end damage blocking both lanes of traffic. Nearby, a tractor trailer was parked along the side of the road. It sustained very little damage. The passenger in the Ford, later identified as Daniel Tutor, was deceased. Paramedic Steve Robbins was assisting the driver, who was still seated in the driver's seat. Officer Mundy identified the driver as the defendant.

3

¶ 7    Officer Mundy testified that he "thought [the defendant] could have been under the influence." He explained that the defendant had slurred speech when talking to Robbins and he was unable "to answer straight questions." Officer Mundy also noted that when the defendant exited his vehicle, he needed help getting out of the vehicle and walking. Officer Mundy acknowledged that he did not talk to the defendant at any time and he did not get close enough to the defendant to see what type of injury he had sustained. He stated, however, that the defendant's face appeared to be "a little bloody."

¶ 8    Officer Mundy further testified that the defendant was not placed under arrest at the scene of the accident. After the defendant was transported to St. Louis University Hospital for treatment and Daniel Tutor's body was removed from the defendant's vehicle, Officer Mundy conducted an inventory search of the vehicle. He testified that he saw debris all over the interior of the vehicle, including compact discs and cases. He further testified that he found an open bottle of Crown Royal on the driver's seat under debris. There was still some alcohol in the bottle.

¶ 9    The State's second witness was Detective John Vito Parisi. He testified that he was called into work at approximately 12:45 on the morning of March 10, 2016. When he arrived at the scene of the accident, Chief Jones approached his vehicle and directed him to go to St. Louis University Hospital to obtain a blood sample from the defendant.

¶ 10    Detective Parisi arrived at the hospital at approximately 1:25 a.m. and left approximately one hour later. He testified that, when he arrived, the defendant was "either passed out or unconscious." Detective Parisi did not observe the defendant displaying any signs of intoxication. Asked to describe the defendant's injuries, Detective Parisi replied, "His nose was just laid open."

4

¶ 11    Detective Parisi waited for the emergency room nurses to finish treating the defendant. He then read the defendant the warning to motorists (see 625 ILCS 5/11-501.1(c), 11-501.6(c) (West 2014)) and asked the defendant if he understood. According to Detective Parisi, the defendant "just gave [him] a grunt." He then approached the defendant to ask him to provide a blood sample, but the defendant did not respond. He stated that the defendant appeared to be "either unconscious or in a deep, deep sleep." Detective Parisi then asked one of the nurses to take a blood sample from the defendant. Asked if the defendant was "unconscious during this time," Detective Parisi replied, "He was unconscious. At one time, he gave the nurses a hard time. He told them, 'why are you laughing at me?' And the nurses told him, 'nobody is laughing at you.' " We note that Detective Parisi was never asked to clarify his somewhat contradictory testimony concerning the defendant's state of consciousness.

¶ 12    A nurse obtained a blood sample from the defendant and gave it to Detective Parisi. Detective Parisi testified that he eventually read the reports of Officer Mundy, Officer Sherman, and the accident reconstruction specialist; however, he acknowledged that he did not read any of these reports on the day he obtained the blood sample from the defendant. Although he testified that he did read Chief Jones's report that morning, he did not say whether he read the report before obtaining the blood sample, and he did not describe its contents.

¶ 13    After Detective Parisi testified, the court turned its attention to the arguments of the parties. The defendant argued that, under *Missouri v. McNeely*, 569 U.S. 141 (2013), a search warrant is required for a blood draw unless there are exigent circumstances and there was no evidence in this case that the State even attempted to obtain a warrant. He further argued that neither section 11-501.1 nor 11-501.6 of the Illinois Vehicle Code were applicable because the defendant was not under arrest when his blood was drawn. See 625 ILCS 5/11-501.1, 11-501.6

5

(West 2014).

¶ 14    The court asked defense counsel whether an arrest is necessary for section 11-501.2 to apply. See *id.* § 11-501.2. The court noted that subsection (c)(2) of that statute, the portion relied upon by the State, explicitly states only that it applies "if an officer has probable cause" and says nothing about an arrest of the defendant. See *id.* § 11-501.2(c)(2). In response, counsel argued that this provision must be read in the context of the entire statute. He noted that subsection (a) of the same statute expressly states that the statute applies only to a defendant who is under arrest (see *id.* § 11-501.2(a)) and argued that, as such, any provision within the statute requires an arrest to be applicable.

¶ 15    The State argued that, in *McNeely*, the Supreme Court did not hold that a search warrant is required in every case; rather, the Court held that whether there are exigent circumstances justifying a warrantless blood draw must be determined on a case-by-case basis. See *McNeely*, 569 U.S. at 153. The court asked the assistant State's Attorney whether he thought that Detective Parisi could have obtained a warrant. The following exchange then took place:

> "MR. FULD [(ASSISTANT STATE'S ATTORNEY)]: I think it's possible, yes, Your Honor, but I would argue that he did not need to—
>
> THE COURT: That's not my question. Do you think that he had sufficient information to get a warrant, him personally, based upon the testimony you heard today?
>
> MR. FULD: He was—I can't say for [sure] what he had thought. The timeline— it's possible just in the timeline he could have gotten a warrant. But I can't say from what—you know, he didn't testify as to how much information—he knew that there was a deceased on [the] scene. He was ordered by the chief to get the blood draw."

The State went on to argue that whether Detective Parisi could have obtained a warrant was not

relevant because the statutes provide implied consent and the United States Supreme Court said in *Birchfield v. North Dakota* that it did not want to disturb such statutes. See *Birchfield v. North Dakota*, 579 U.S. ___, ___, 136 S. Ct. 2160, 2185 (2016).

¶ 16    The court asked the prosecutor whether the implied consent statutes are applicable to a defendant who is not under arrest for DUI or any traffic violation. The prosecutor argued that section 11-501.2(c)(2) applies with or without an arrest if a defendant is unconscious and there has been a fatality. The court then asked whether probable cause is necessary for the implied consent statutes to apply. The prosecutor acknowledged that probable cause is necessary under the statute. See 625 ILCS 5/11-501.2(c)(2) (West 2014). He argued, however, that there was probable cause to believe that the defendant had caused the accident while driving under the influence based on Officer Mundy's testimony. He asserted that "presumably" Chief Jones knew what Officer Mundy knew before deciding to order Detective Parisi to obtain the blood sample. The court noted, however, that there was a "missing link" in this argument. The court took the matter under advisement.

¶ 17    The court subsequently entered a written order granting the defendant's motion to suppress. The order did not contain detailed findings of fact. The court stated that, after reviewing the pertinent statutes and applicable case law, it found that "the sole path to admissibility" of the defendant's blood test results was the exigent circumstances exception to the requirement of a warrant. The court further found that the State's evidence did not satisfy the requirements for this exception. The court therefore granted the defendant's motion to suppress the evidence. The State filed a certificate of impairment and the instant appeal pursuant to Illinois Supreme Court Rule 604(a)(1) (eff. July 1, 2017).

¶ 18    Both the United States Constitution and the Illinois Constitution guarantee citizens the

right to be free from unreasonable searches and seizures. U.S. Const., amend. IV; Ill. Const. 1970, art. I, § 6. The compulsory blood test that occurred in this case is a search within the meaning of the fourth amendment. *McNeely*, 569 U.S. at 148. To be "reasonable," a search must be conducted pursuant to a warrant unless it falls within one of the " 'specifically established and well-delineated exceptions' to the requirement of a warrant." *People v. Hayes*, 2018 IL App (5th) 140223, ¶ 27 (quoting *Katz v. United States*, 389 U.S. 347, 357 (1967)). One such specific, well-delineated exception is consent. *People v. Anthony*, 198 Ill. 2d 194, 202 (2001); *Hayes*, 2018 IL App (5th) 140223, ¶ 28. There is no dispute in this case that the defendant never expressly consented to the blood draw. The State asserts, however, that he impliedly consented to the search under the implied consent provisions in the Illinois Vehicle Code. As such, the State argues, the trial court erred in granting the defendant's motion to suppress.

¶ 19    In proceedings on a motion to suppress evidence, it is the defendant who bears the burden of proof. *People v. Brooks*, 2017 IL 121413, ¶ 22. The defendant must first make a *prima facie* showing that there is a basis to grant the motion to suppress. This requires him to demonstrate both that a search occurred and that it was unreasonable under the fourth amendment. *Id.* Once the defendant makes this *prima facie* showing, the burden shifts to the State to show that the search was constitutionally valid. *Id.* On appeal, we review the court's findings of fact to determine whether they are against the manifest weight of the evidence. However, we review *de novo* the court's ultimate determination to grant or deny the motion to suppress. *Id.* ¶ 21.

¶ 20    The State first argues that the court erred in denying its motion for a directed finding. The State correctly argues that the defendant bore the initial burden of proving both that a search occurred and that the search was not valid. See *id.* ¶¶ 22, 24. In this case, the State points out, the defendant testified that he did not remember the emergency room nurse drawing his blood, and

8

he did not present any evidence that the blood draw occurred at all. The State acknowledges that Detective Parisi later testified that the blood draw occurred. It emphasizes, however, that it is the defendant's initial burden to prove that a search occurred. The State argues that this case is "factually indistinguishable from *Brooks*," and points out that there, the Illinois Supreme Court rejected the notion that "because [the] defendant filed a motion to suppress evidence and the parties proceeded to argue the motion as if a blood draw was performed, [the] defendant, in fact, established that a search took place." *Id.* ¶ 26.

¶ 21 We are not persuaded. For one thing, we believe that this case *is* distinguishable from *Brooks*. The defendant in that case, who was conscious at the relevant time, testified that he refused to consent to a blood draw. But he never testified that he was, in fact, subjected to a blood draw. *Id.* ¶ 25. A police officer testified that he accompanied the defendant to the hospital, where he observed nurses treating the defendant. However, the officer testified that he did not know whether any blood draw took place. *Id.* Thus, in *Brooks*, there was no evidence in the record to establish that the defendant's blood was actually drawn. *Id.* As the State acknowledges, the record in this case does contain such evidence.

¶ 22 Moreover, as the defendant points out, the State did not raise this argument when it asked the trial court for a directed finding. He argues that the State has therefore forfeited this contention. He notes that, had the State raised this argument at trial when it moved for a directed finding, he would have had the opportunity to cure the defect by presenting evidence that the blood draw did in fact occur. We agree with the defendant that the State has forfeited this claim by failing to raise it before the trial court. Allowing the State to raise this argument for the first time on appeal would unfairly deprive the defendant of the opportunity to present evidence to address the issue. See *People v. Thompson*, 337 Ill. App. 3d 849, 854 (2003).

9

¶ 23    The State next argues that the court erred in granting the defendant's motion to suppress because the blood draw was a valid consensual search under the implied consent provisions in the Illinois Vehicle Code. Much of both parties' arguments focus on whether these provisions are constitutional in the wake of the United States Supreme Court's decisions in *McNeely* and *Birchfield*. As we will explain, however, we find that the requirements of the implied consent provisions are not satisfied. Because the provisions are therefore inapplicable, it would not be appropriate for us to resolve the parties' arguments concerning the constitutionality of the statutory provisions. See *People v. Lee*, 214 Ill. 2d 476, 481-82 (2005) (explaining that a court should not decide a constitutional question if the case can be resolved on other grounds).

¶ 24    The implied consent provisions are found in three sections of the Illinois Vehicle Code— sections 11-501.1, 11-501.2, and 11-501.6 (625 ILCS 5/11-501.1, 11-501.2, 11-501.6 (West 2014)). Section 11-501.1(a) provides that any motorist driving on the roads of this state "shall be deemed to have given consent" to the administration of drug or alcohol testing if he is arrested for DUI. *Id.* § 11-501.1(a). Section 11-501.6(a) contains similar language, which provides that a motorist "shall be deemed to have given consent" to such tests if he is in a motor vehicle accident involving a personal injury or fatality and he is arrested for any nonequipment violation of the Illinois Vehicle Code. *Id.* § 11-501.6(a). Both statutes also provide that a motorist who is deceased, unconscious, or otherwise rendered unable to refuse testing "shall be deemed not to have withdrawn" his implied consent to the testing. *Id.* §§ 11-501.1(b), 11-501.6(b).

¶ 25    Section 11-501.2 does not itself provide that motorists give implied consent to drug or alcohol testing, but it governs the procedures for obtaining and admitting such tests into evidence. Subsection (a) provides that evidence of intoxication obtained through tests performed pursuant to these provisions is admissible in "any civil or criminal *** proceeding arising out of

10

an arrest" for DUI or in statutory summary suspension proceedings, subject to certain requirements not relevant here. *Id.* § 11-501.2(a). Subsection (c)(1) provides that "[i]f a person under arrest refuses to submit" to testing, evidence of the person's refusal is admissible. *Id.* § 11-501.2(c)(1). Finally, subsection (c)(2) provides as follows:

"Notwithstanding any ability to refuse under this Code to submit to these tests or any ability to revoke the implied consent to these tests, if a law enforcement officer has probable cause to believe that a motor vehicle driven by *** a person under the influence of alcohol [or] other drug or drugs *** has caused the death or personal injury to another, the law enforcement officer shall request, and that person shall submit, upon the request of a law enforcement officer, to a chemical test or tests *** for the purpose of determining the alcohol content thereof or the presence of any other drug or combination of both." *Id.* § 11-501.2(c)(2).

¶ 26    We note that in *People v. Eubanks*, 2017 IL App (1st) 142837, ¶ 66, the First District held that, under the United States Supreme Court's decision in *McNeely*, section 11-501.2(c)(2) is unconstitutional on its face. That case is currently pending on appeal before the Illinois Supreme Court. See People v. Eubanks, No. 123525 (Ill. Sept. 26, 2018). Although we find the First District's rationale in *Eubanks* persuasive, we do not believe this is a proper case in which to address the constitutionality of the statute. As we explained previously, this is because, even assuming the implied consent provisions pass constitutional muster, they are not applicable under the circumstances of this case.

¶ 27    We reach this conclusion for two reasons. First, the defendant was not under arrest when the tests were ordered, and second, the State failed to demonstrate that the facts known to either Chief Jones or Detective Parisi were sufficient to give them probable cause to believe the

11

defendant had driven under the influence at the time they ordered the blood draw.

¶ 28   As we discussed earlier in this decision, the State argued at trial that an arrest was not necessary for a finding of implied consent because subsection 11-501.2(c)(2) expressly states that it is applicable any time an officer has probable cause to believe that an accident involving a fatality or injury was caused by an impaired driver. See 625 ILCS 5/11-501.2(c)(2) (West 2014). The defendant, by contrast, urged the trial court to consider the entire statute, including subsection (a), which provides that test results are admissible in proceedings "arising out of an arrest." See *id.* § 11-501.2(a); see also *id.* § 11-501.2(c)(1) (providing evidentiary consequences for motorists who refuse to submit to chemical tests while under arrest). We must construe a statute as a whole, and we must read it in conjunction with other related statutory provisions. *People v. Jackson*, 2011 IL 110615, ¶ 12. We thus find the State's argument that subsection 11-501(c)(2) should be construed in isolation unavailing. See *id.*

¶ 29   As we previously explained, subsection 11-501.2(c)(2) appears within a statute that is otherwise applicable only to motorists who are under arrest. In addition, the provision must be read in conjunction with sections 11-501.1 and 11-501.6—the statutes that actually provide that consent to chemical testing is implied. See 625 ILCS 5/11-501.1, 11-501.6 (West 2014). Both of those statutes, by their express terms, apply only to motorists who are under arrest. *Hayes*, 2018 IL App (5th) 140223, ¶¶ 42, 44 (explaining that section 11-501.1 applies only to motorists under arrest for DUI when asked to submit to testing, while section 11-501.6 applies only to motorists under arrest for any nonequipment Vehicle Code violation in an accident involving a fatality or serious injury). It is worth noting that the State also relies on section 11-501.6(b), which provides that a driver who is unconscious or otherwise unable to give consent is deemed not to have revoked his implied consent to chemical testing. See 625 ILCS 5/11-501.6(b) (West 2014).

Absent an arrest, however, there is no implied consent to revoke.

¶ 30    Moreover, even if we were to accept the State's interpretation of section 11-501.2(c)(2), we do not believe the record in this case establishes that either Chief Jones or Detective Parisi had probable cause to believe that the defendant had driven under the influence. An officer has probable cause to conduct a search when the facts and circumstances known to him before he conducts the search would reasonably lead him to believe that the search is likely to yield evidence of a crime. *People v. Lukach*, 263 Ill. App. 3d 318, 323 (1994). Here, Detective Parisi testified that he asked emergency room personnel to draw blood from the defendant because he was directed to do so by Chief Jones. He did not personally observe any signs that the defendant was intoxicated, and there is no evidence that he read the reports of any of the responding officers before he requested the blood draw. Chief Jones did not testify at the hearing, and his report was not entered into evidence. In short, the record contains no evidence as to what Chief Jones knew at the time he directed Detective Parisi to obtain the blood sample, and there is likewise no evidence as to what, if anything, Detective Parisi knew about the circumstances of the crash before he requested the sample. It is worth noting that the prosecutor essentially conceded as much at the probable cause hearing. Although he argued that there was probable cause for the blood draw based on Officer Mundy's testimony, he acknowledged that Detective Parisi did not testify concerning what information he had at the relevant time. Because probable cause is based on the facts and circumstances known to the officer before he conducts a search, the record does not support a finding of probable cause.

¶ 31    We also find that the facts testified to by Officer Mundy would not have been sufficient to establish probable cause even if there was evidence that Detective Parisi knew of those facts before requesting the blood draw. The State relies in part on Officer Mundy's observation that

the defendant had difficulty answering the paramedic's questions, slurred speech, and difficulty walking. These can be indicia of intoxication. See *People v. Boomer*, 325 Ill. App. 3d 206, 210 (2001). However, the undisputed evidence showed that the defendant was seriously injured in a motor vehicle accident. His injuries were likely to cause difficulty speaking and walking whether or not he was intoxicated. The State also relies on Officer Mundy's testimony that he found an open liquor bottle in the defendant's vehicle, something which might give rise to a reasonable inference that the defendant consumed at least some of the liquor. However, there was no evidence as to when the liquor was consumed or how much of it was consumed by the defendant. We note that some of the liquor may have been consumed by the passenger, and Officer Mundy did not specify how much liquor was left in the bottle. There was no other evidence of intoxication in this case—there was no evidence that the defendant drove erratically before the collision, no evidence that he had red or glassy eyes, and no evidence that he smelled of alcohol or admitted to drinking. Without some corroborating evidence, we do not believe the facts known to Officer Mundy were sufficient to support a finding of probable cause. Absent probable cause and an arrest, the implied consent statutes do not apply.

¶ 32 Because the State failed to establish that the implied consent statutes were applicable, evidence of the test results is admissible only if some other recognized exception to the requirement of a search warrant applies. As noted earlier, the trial court considered whether the "exigent circumstances" exception applies. That exception applies when circumstances "create a compelling need for officers to conduct the search before there is time to obtain a warrant." *Hayes*, 2018 IL App (5th) 140223, ¶ 27 (citing *McNeely*, 569 U.S. at 148-49). The search must also be supported by probable cause. *Id.* (citing *People v. Ferral*, 397 Ill. App. 3d 697, 706 (2009)).

14

¶ 33     The State does not argue on appeal that this exception applies, and we agree with the trial court that its requirements are not met. As we have just concluded, the record does not establish probable cause. In addition, there was no evidence presented to show that it would have been impossible for any of the numerous officers involved in the investigation to obtain a warrant before requesting the blood draw. See *McNeely*, 569 U.S. at 154-55 (explaining that advances in technology and changes to the procedural rules in most states allow officers to apply for warrants remotely and provide for streamlined processing of warrant applications in DUI cases). We note that the prosecutor admitted at trial that it was "possible [based on] the timeline" that Detective Parisi could have obtained a warrant.

¶ 34     We conclude that neither exigent circumstances nor implied consent applied in this case. Because no recognized exception to the requirement of a warrant was applicable, the warrantless blood draw violated the fourth amendment. Thus, the trial court correctly suppressed evidence of the test results.

¶ 35     For the foregoing reasons, we affirm the order of the trial court granting the defendant's motion to suppress.


¶ 36     Affirmed.

2018 IL App (5th) 170427

NO. 5-17-0427

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | St. Clair County. |
| | ) | |
| v. | ) | No. 16-CF-1272 |
| | ) | |
| RICKY L. PRATT, | ) | Honorable |
| | ) | Robert B. Haida, |
| Defendant-Appellee. | ) | Judge, presiding. |

**Opinion Filed:** **December 19, 2018**

**Justices:**     Honorable Melissa A. Chapman, J.

Honorable Thomas M. Welch, J., and
Honorable Richard P. Goldenhersh, J.

**Attorneys**
**for**
**Appellant**     Patrick Delfino, Director, Patrick D. Daly, Deputy Director, Office of the State's Attorneys Appellate Prosecutor, 730 East Illinois Highway 15, Suite 2, Mt. Vernon, IL 62864; Hon. Brendan F. Kelly, State's Attorney, St. Clair County, 10 Public Square, Belleville, IL 62220

**Attorneys**
**for**
**Appellee**     James E. Chadd, State Appellate Defender, Ellen J. Curry, Deputy Defender, Lawrence J. O'Neill, Assistant Appellate Defender, Office of the State Appellate Defender, Fifth Judicial District, 909 Water Tower Circle, Mt. Vernon, IL 62864