# Illinois Official Reports

## Appellate Court

---

### *People v. Patel*, 2020 IL App (2d) 190532

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. UPEN S. PATEL, Defendant-Appellee. |
| District & No. | Second District<br>No. 2-19-0532 |
| Filed | September 4, 2020 |
| Decision Under Review | Appeal from the Circuit Court of Du Page County, No. 16-CF-414; the Hon. Brian F. Telander, Judge, presiding. |
| Judgment | Reversed and remanded. |
| Counsel on Appeal | Robert B. Berlin, State's Attorney, of Wheaton (Lisa Anne Hoffman and Mary A. Fleming, Assistant State's Attorneys, of counsel), for the People.<br><br>Alan T. Davis, of Fagan, Fagan & Davis, of Des Plaines, for appellee. |
| Panel | JUSTICE HUDSON delivered the judgment of the court, with opinion.<br>Justices Zenoff and Schostok concurred in the judgment and opinion. |

**OPINION**

¶ 1      The State appeals from a ruling by the circuit court of Du Page County granting defendant Upen S. Patel's motion *in limine* to bar admission of blood-alcohol test results in his criminal trial for aggravated driving under the influence of alcohol (DUI). Because the trial court erred in granting the motion *in limine*, we reverse and remand.

¶ 2                        I. BACKGROUND

¶ 3      Defendant was indicted on one count of aggravated DUI (625 ILCS 5/11-501(a)(2), (d)(1)(A), (d)(2)(C) (West 2014)), one count of aggravated DUI while having a blood alcohol of 0.08 or more (625 ILCS 5/11-501(a)(1), (d)(1)(A), (d)(2)(C) (West 2014)), one count of aggravated DUI while having consumed a controlled substance (625 ILCS 5/11-501(a)(6), (d)(1)(A), (d)(2)(C) (West 2014)), and two counts of aggravated DUI based on driving with a revoked license (625 ILCS 5/11-501(a)(1), (a)(2), (d)(1)(G), (d)(2)(A) (West 2014)). Defendant filed a motion to suppress evidence of blood and urine testing and a motion *in limine* to bar admission of the blood and urine test results. Defendant argued that his test results were not admissible in his prosecution for DUI because he was not under arrest when the police obtained his blood and urine samples. Defendant relied on sections 11-501.1 and 11-501.2 of the Illinois Vehicle Code (625 ILCS 5/11-501.1, 11-501.2 (West 2014)).

¶ 4      The following facts were established at the combined hearing on the two motions. At about 5:20 p.m. on November 10, 2014, Officer Christopher Zito of the Wood Dale Police Department was assigned to investigate a two-vehicle accident at the intersection of Addison Road and Irving Park Road. Upon arriving, Officer Zito observed two vehicles in the intersection. The driver of one of the vehicles told him that, while he was waiting for the red light to turn green, defendant's vehicle rear-ended him. Someone had requested an ambulance for both parties. When asked if anyone was seriously injured, Officer Zito testified that he did not know but that both individuals were transported to the hospital.

¶ 5      Officer Zito saw defendant sitting on a nearby retaining wall. Defendant's head was bleeding. He told Officer Zito that he had a head injury.

¶ 6      When the paramedics arrived, they treated defendant and told Officer Zito that they would be transporting defendant to the hospital. Officer Zito overheard defendant tell the paramedics that, before driving that day, he had consumed vodka and a drug called Norco.

¶ 7      At about 6:15 p.m., Officer Zito went to the hospital to talk to defendant. When he arrived, defendant was being treated on a gurney in the emergency room.

¶ 8      Officer Zito was in uniform. He was the only officer present and did not draw his weapon or display it aggressively. His interaction with defendant was calm, and he never raised his voice.

¶ 9      Officer Zito administered a horizontal gaze nystagmus (HGN) test on defendant. Defendant seemed to understand the instructions and complied with the test. The HGN test indicated that defendant had consumed alcohol. Defendant also agreed to take a portable breath test, which showed that his blood alcohol content was 0.168.

¶ 10      Officer Zito read defendant a "[t]raffic [c]rash [w]arning to [m]otorists." Officer Zito admitted that he should have read the "standard DUI [w]arning to [m]otorists." According to Officer Zito, both warnings contained essentially the same description of the potential penalties

regarding defendant's driver's license. Each warning advised the same applicable license-suspension period depending on whether a driver refused or submitted to a chemical test.

¶ 11 When Officer Zito "told [defendant] that we [were] asking him to give blood and urine and that the nurse or phlebotomist would be collecting it," defendant agreed to provide both. According to Officer Zito, defendant was aware that Officer Zito was conducting a DUI investigation. Officer Zito denied that he ordered defendant to submit to a chemical test. Officer Zito did not arrest defendant before defendant provided blood or urine.

¶ 12 Officer Zito received the blood test results in May 2015. However, he did not arrest defendant then, because he was still waiting for the urine test results, which he received in November 2015. Officer Zito arrested defendant in March 2016.

¶ 13 The State moved for a directed finding on defendant's motion to suppress and for denial of the motion *in limine*. In response, defendant argued that, because he was not under arrest when he provided blood and urine samples, the test results based on those samples were inadmissible in his prosecution for DUI. Defendant relied on section 11-501.1(a) of the Vehicle Code (625 ILCS 5/11-501.1(a) (West 2014)), which provides that any motorist driving on the roads of this state "shall be deemed to have given consent" to drug and alcohol testing if he is "arrested *** for any offense as defined in [s]ection 11-501." Defendant proposed that section 11-501.1(a), together with section 11-501.2 of the Vehicle Code (625 ILCS 5/11-501.2 (West 2014)), allowed the admission of chemical testing in DUI prosecutions only where the testing was done after the defendant was arrested.

¶ 14 In granting the motion for a directed finding on the motion to suppress and denying the motion *in limine*, the trial court found that Officer Zito was credible. It further found that defendant was not under arrest when he agreed to provide his blood and urine and that his consent was voluntary. The court determined that Officer Zito had probable cause to believe that defendant was driving under the influence.

¶ 15 The court found no Illinois cases holding that section 11-501.1 applied to the "introduction of the blood test that's consensually given with probable cause at a criminal trial."

¶ 16 Defendant filed a motion to reconsider the denial of his motion *in limine*,[1] contending that section 11-501.1 "is not merely for the purpose of [s]tatutory [s]ummary [s]uspensions, [but] is the template for what is necessary for the proper blood-draw of the [d]efendant" if the State would introduce the blood-test results in a prosecution for DUI. The trial court denied the motion to reconsider.

¶ 17 Defendant then filed a second motion to reconsider the denial of his motion *in limine*. In this motion, defendant contended that the recent decision in *People v. Pratt*, 2018 IL App (5th) 170427, supported his original argument that he was required to be under arrest before his blood could be drawn for use in a criminal trial for DUI.

¶ 18 At the hearing on the second motion to reconsider, the trial court noted that it had already found that defendant was not under arrest when he provided blood and urine samples and that he consented to Officer Zito's request for samples. The court added that Officer Zito read to defendant the wrong motorist warning and that it was not entirely the same as the correct motorist warning. Based on *Pratt* and the fact that Officer Zito read defendant the wrong motorist warning and obtained blood and urine samples from him before he was under arrest,

---

[1]Defendant did not move the court to reconsider its ruling on the motion to suppress.

the court granted defendant's motion to reconsider and granted his motion *in limine*. The State, in turn, filed a timely appeal. See Ill. S. Ct. R. 604(a)(1) (eff. July 1, 2017).

¶ 19                                    II. ANALYSIS

¶ 20     On appeal, the State contends that the trial court erred in granting the motion *in limine*, because a defendant is not required to have been under arrest before consenting to chemical testing that will be used at a criminal trial for DUI. Defendant disagrees, relying primarily on *Pratt*.

¶ 21     We begin by clarifying the applicable standard of review. The State incorrectly asserts that *de novo* review applies because we are reviewing the ultimate ruling on a motion to suppress. We disagree—we are reviewing a ruling on a motion *in limine*.

¶ 22     Ordinarily, a reviewing court will not reverse a ruling on a motion *in limine* absent a clear abuse of discretion. *People v. Williams*, 188 Ill. 2d 365, 369 (1999). However, a trial court must exercise its discretion within the bounds of the law. *Williams*, 188 Ill. 2d at 369. Where a trial court's exercise of discretion is frustrated by an erroneous rule of law, the reviewing court must require the exercise of discretion consistent with the law. *Williams*, 188 Ill. 2d at 369. Further, where the question is one of law, the reviewing court determines it *de novo*. *Williams*, 188 Ill. 2d at 369. Here, because the issue is whether the trial court, in granting defendant's motion *in limine*, properly interpreted the applicable statutory provisions, we apply *de novo* review. See *People v. Miles*, 2020 IL App (1st) 180736, ¶ 9 (a question of statutory construction is one of law subject to *de novo* review).

¶ 23     Defendant renews on appeal the argument he presented below. He contends that section 11-501.1's requirement, that a driver must first be arrested before he shall be deemed to have impliedly consented to a chemical test of his blood or urine, applies in a criminal prosecution for DUI. We disagree.

¶ 24     We begin by noting that defendant cites no case directly supporting his contention. Our research, however, reveals a case that directly refutes defendant's position. See *People v. Wozniak*, 199 Ill. App. 3d 1088 (1990). In *Wozniak*, the defendant was charged with DUI. *Wozniak*, 199 Ill. App. 3d at 1089. At his criminal trial, he sought suppression of his breath-test results because he had not been arrested before he submitted to the test. *Wozniak*, 199 Ill. App. 3d at 1089-90. In rejecting that contention, the appellate court recognized the substantive differences between a summary-suspension proceeding and a criminal prosecution for DUI. *Wozniak*, 199 Ill. App. 3d at 1091. The court found no expression of legislative intent to extend the predicate-arrest provision of the summary-suspension provisions to a DUI prosecution. *Wozniak*, 199 Ill. App. 3d at 1091. Thus, the court held that, for purposes of a DUI prosecution, admissibility of a blood-alcohol test result is subject only to fourth amendment constraints and those provisions of the Vehicle Code related to the administration of such tests. *Wozniak*, 199 Ill. App. 3d at 1091. Clearly, *Wozniak* forecloses defendant's argument.

¶ 25     Defendant, however, relies heavily on *Pratt* to support his argument that a defendant must have been under arrest when he gave his samples for the test results to be admissible in a criminal DUI trial. We find defendant's reliance on *Pratt* to be misplaced.

¶ 26     In *Pratt*, the defendant was involved in a traffic accident. *Pratt*, 2018 IL App (5th) 170427, ¶ 2. While defendant was unconscious at the hospital, a detective directed medical personnel to draw defendant's blood for chemical testing. *Pratt*, 2018 IL App (5th) 170427, ¶¶ 1-2. The

defendant was subsequently charged with aggravated DUI. *Pratt*, 2018 IL App (5th) 170427, ¶ 2. The defendant moved to suppress the test results. *Pratt*, 2018 IL App (5th) 170427, ¶ 3. The State argued that a warrant was unnecessary for the blood draw because defendant's consent to the draw was implied under section 11-501.1. *Pratt*, 2018 IL App (5th) 170427, ¶ 15. The court granted the motion to suppress. *Pratt*, 2018 IL App (5th) 170427, ¶ 17.

¶ 27    On appeal, the State reasserted its argument that the blood draw was a valid consensual search under section 11-501.1 and the other implied-consent provisions of the Vehicle Code. *Pratt*, 2018 IL App (5th) 170427, ¶ 23. The State relied on section 11-501.2(c)(2) of the Vehicle Code, which stated:

> "Notwithstanding any ability to refuse under this Code to submit to these tests or any ability to revoke the implied consent to these tests, if a law enforcement officer has probable cause to believe that a motor vehicle driven by or in actual physical control of a person under the influence *** has caused the death or personal injury to another, the law enforcement officer shall request, and that person shall submit, upon the request of a law enforcement officer, to a chemical test or tests *** for the purpose of determining the alcohol content thereof or the presence of any other drug or combination of both." 625 ILCS 5/11-501.2(c)(2) (West 2014).

¶ 28    In affirming the trial court's ruling, the appellate court noted that section 11-501.2(c)(2) "appears within a statute that is otherwise applicable only to motorists who are under arrest." *Pratt*, 2018 IL App (5th) 170427, ¶ 29. Further, "the provision must be read in conjunction with sections 11-501.1 and 11-501.6—the statutes that actually provide that consent to chemical testing is implied." *Pratt*, 2018 IL App (5th) 170427, ¶ 29.

¶ 29    The appellate court's language, devoid of context, might suggest that a defendant who is not under arrest, as required by the implied-consent provisions of sections 11-501.1 and 11-501.6 (625 ILCS 5/11-501.6 (West 2014)), cannot validly consent to chemical testing for purposes of a criminal trial for DUI. However, we read it in the context of the unique facts in *Pratt*. As noted, the State, in seeking admission of the defendant's chemical test, argued that he impliedly consented. Thus, under those circumstances, it was reasonable for the court to apply the implied-consent provisions of sections 11-501.1 and 11-501.6, including the requirement that the defendant had been under arrest before he could give implied consent. Indeed, the court in *Pratt* went on to note that, because the State failed to establish the admissibility of the blood draw under the implied-consent provisions, the test results could have been admissible only under "some other recognized exception" to the warrant requirement. *Pratt*, 2018 IL App (5th) 170427, ¶ 32. Because no other exception to the warrant requirement had been established, the warrantless blood draw was properly suppressed. *Pratt*, 2018 IL App (5th) 170427, ¶ 34; see *People v. Hayes*, 2018 IL App (5th) 140223, ¶ 58 (holding that, even though the State could not rely on implied consent unless the defendant had been under arrest, the admissibility of test results were not similarly limited where the defendant gave voluntary consent).

¶ 30    In this case, unlike *Pratt*, the State did not rely on implied consent. Rather, the State sought admission of the chemical test results based on defendant's actual consent. Thus, *Pratt* is distinguishable and does not support defendant's contention.

¶ 31    Defendant also points to language in section 11-501.2(a), which provides, in pertinent part, that in a criminal proceeding "arising out of an arrest" for an offense under section 11-501, evidence of the concentration of alcohol or drugs in a person's blood, as determined by analysis

of his blood or urine, shall be admissible. 625 ILCS 5/11-501.2(a) (West 2014). Relying on that language, defendant argues that drug or alcohol testing may be admitted in a criminal trial for DUI only if the defendant was under arrest when he consented to the chemical test. We disagree.

¶ 32    The primary objective when interpreting a statute is to ascertain the legislative intent. *Miles*, 2020 IL App (1st) 180736, ¶ 9. The best indication of legislative intent is the plain and ordinary meaning of the statutory language. *Miles*, 2020 IL App (1st) 180736, ¶ 9. In determining the plain meaning, we must consider the entire statute and be mindful of its subject and the legislative purpose. *Miles*, 2020 IL App (1st) 180736, ¶ 9.

¶ 33    The "arising out of an arrest" language in section 11-501.2(a) is immediately followed by the phrase "for an offense as defined in [s]ection 11-501." 625 ILCS 56/11-501.2(a) (West 2014). When read together, those two phrases merely provide that a defendant's drug or alcohol testing shall be admissible in any case based on an arrest for a violation of section 11-501. They do not provide that a defendant must have been under arrest at the time he consented to drug or alcohol testing for the test results to be admissible in a DUI trial.

¶ 34    Defendant points to language in section 11-501.2(a)(2) that "a person in this State shall submit to a blood test at the request of a law enforcement officer under the provisions of [s]ection 11-501.1" (625 ILCS 5/11-501.2(a)(2) (West 2014)) and to language in section 11-501.1(a) (625 ILCS 5/11-501.1(a) (West 2014)) that chemical tests "shall be administered at the direction of the arresting officer." He argues, based on these provisions, that test results are not admissible unless defendant was under arrest when he submitted to testing. However, defendant has neglected to include the word "when" at the beginning of the phrase in section 11-501.2(a)(2). The use of the term "when" reflects merely the circumstance in which a defendant submits to a blood test under section 11-501.1. It does not indicate, as defendant suggests, that in a situation where a defendant gives actual consent to provide a blood sample, there first must have been an arrest, as required by section 11-501.1.

¶ 35    As discussed, in seeking admission of the chemical tests of defendant's blood and urine, the State relied on defendant's actual consent. See *People v. Pitman*, 211 Ill. 2d 502, 523 (2004) (well-settled exception to the warrant requirement is a search conducted with consent) (citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973)). Defendant, however, does not challenge the admission of the chemical tests on the basis that his actual consent was otherwise invalid. Rather, he relies exclusively on his contention that he was not under arrest when he consented. Indeed, in his brief he states that there is "no disagreement that [he] submitted to blood testing." Thus, he has forfeited any claim that he did not consent. See *People v. Olsson*, 2014 IL App (2d) 131217, ¶ 16.

¶ 36    Defendant asserts, however, that it would be unfair to allow the State to argue on appeal that he gave actual consent, because it never relied on his actual consent before the trial court granted his motion *in limine*. We disagree. The record shows that the State relied on actual consent. The State elicited testimony from Officer Zito that defendant consented to provide blood and urine for chemical testing. Further, the trial court found that defendant consented to the chemical testing. Additionally, in responding to defendant's reliance on *Pratt*, the State contended that *Pratt* did not apply because defendant had given actual consent. Thus, there is no doubt that the State raised the issue of actual consent in the trial court.

¶ 37    Lastly, defendant asserts that we should affirm because Officer Zito waited 16 months after obtaining the blood evidence to procure an arrest warrant. Defendant has forfeited this point

because he neither presents any reasoned argument nor cites any authority. See *People v. Pope*, 2020 IL App (4th) 180773, ¶ 75 (citing Ill. S. Ct. R. 341(h)(7) (eff. May 25, 2018)). A reviewing court is entitled to have the issues clearly defined with pertinent authority cited and is not simply a depository into which the appealing party may dump the burden of argument or research. *People v. Oglesby*, 2016 IL App (1st) 141477, ¶ 205. Even if the argument had not been forfeited, it would fail. Defendant has not identified, nor does the record indicate, any prejudice he suffered from the delay in arresting him.[2]

¶ 38    For the foregoing reasons, we hold that the trial court erred in granting defendant's motion *in limine* and barring the State from introducing the results of defendant's consensual blood and urine tests.

¶ 39                                III. CONCLUSION

¶ 40    For the reasons stated, we reverse the judgment of the circuit court of Du Page County and remand for further proceedings.

¶ 41    Reversed and remanded.

---

[2]We note that Officer Zito testified that, although he received the blood-test result in May 2015, he did not arrest defendant at that point, because he was waiting on the urine test results, which he did not receive until late in 2015. Thus, the delay in arresting defendant was far shorter than 16 months.