2021 IL App (1st) 173021-U

No. 1-17-3021

Order filed May 20, 2021

Fourth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 17 CR 25 |
| | ) | |
| GREGORY MONTGOMERY, | ) | Honorable |
| | ) | Vincent M. Gaughan, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE REYES delivered the judgment of the court.
Presiding Justice Gordon and Justice Lampkin concurred in the judgment.

**ORDER**

¶ 1     *Held*: Defendant's conviction for armed habitual criminal is affirmed over his contention the trial court should have granted his motion to suppress a handgun officers recovered from his person, and his 17-year sentence is affirmed over his contention it was excessive.

¶ 2     Following a jury trial, defendant Gregory Montgomery was found guilty of armed habitual criminal and sentenced to 17 years' imprisonment. On appeal, defendant contends the trial court

should have granted his motion to suppress a firearm police officers recovered from his person, and that his sentence was excessive. We affirm.

¶ 3 Defendant was charged with one count of armed habitual criminal (720 ILCS 5/24-1.7(a)(1) (West 2016)) which alleged he knowingly or intentionally possessed a handgun after having been convicted of armed robbery and murder in two separate prior cases. One count of armed violence (720 ILCS 5/33A-2(a) (West 2016)) alleged defendant, while armed with a handgun, committed possession of a controlled substance with intent to deliver (720 ILCS 570/401(d) (West 2016)) in that he possessed less than one gram of cocaine.[1] As defendant only challenges the denial of his motion to suppress and his sentence, we recite only those facts necessary to decide this appeal.

¶ 4 Prior to trial, defendant filed a motion to suppress a handgun police officers recovered from his person, arguing they lacked legal justification to stop, detain, and search him.

¶ 5 At the hearing on this motion, Chicago police officer Robert Pizzo testified he and his partner, James Bansley, were patrolling the 8900 block of South Escabana Avenue at approximately 8:07 p.m. on November 29, 2016. They were in a police vehicle and wearing plainclothes; Pizzo had "a sweatshirt on with a police vest over it." Bansley was driving the vehicle and Pizzo was the passenger.

¶ 6 Pizzo noticed defendant, whom he identified in court, riding his bicycle on the sidewalk "at 90th [Street] and Exchange [Avenue]." Pizzo testified that "[r]iding your bike on the sidewalk as an adult in and of itself is a ticketable offense." The officers did not have a search or arrest

---

[1] The State nol-prossed four counts of aggravated unlawful use of a weapon, two counts of unlawful use or possession of a weapon by a felon, one count of possession of a controlled substance with intent to deliver, and one count of violation of the Firearm Owner's Identification Act.

warrant for defendant. The officers approached defendant and he became "erratic" and "would not comply," then ran away. They chased defendant, who slipped and fell. The officers immediately handcuffed defendant behind his back while he was lying on the ground. Pizzo then recovered a handgun from defendant's jacket pocket. Pizzo did not know whether defendant had a FOID card or a concealed carry permit when he searched defendant.

¶ 7    Pizzo confirmed a video recording from a bodyworn camera accurately depicted the officers' interactions with defendant.[2] The video, which was entered into evidence, depicts defendant riding a bicycle on a sidewalk in front of residential buildings. He is riding toward a perpendicular sidewalk and street, but stops when the officers approach him. Defendant dismounts and walks toward the perpendicular sidewalk with Pizzo in front of him and Bansley behind him. Bansley touches defendant's left upper arm and defendant backs away from the officers with his hands raised.

¶ 8    Defendant then proceeds to run down the perpendicular sidewalk and the officers chase him. Defendant falls as he runs into the street. He is lying on his left side as the officers approach; they handcuff him behind his back immediately. Pizzo pulls defendant to his feet. The video does not directly display the officers' search of defendant's jacket pocket, but their hands are visible moving toward his right side, and then a black handgun is seen on the ground at defendant's right side. Pizzo identified himself as the individual empting defendant's jacket pocket. He removed the weapon from defendant's pocket and set it on the ground and Bansley recovered it. In the video, Pizzo is seen continuing his search of defendant and multiple marked police vehicles arrive on scene.

_____

[2] At trial, Bansley confirmed the video recording was from his bodyworn camera.

¶ 9    On cross-examination, Pizzo testified he could immediately tell defendant was more than 12 years of age. Defendant did not provide any information to the officers when they approached him. The first thing defendant did was "try to walk away" from the officers, then he "ditche[d] his bicycle" and ran.

¶ 10    When Pizzo searched defendant, he felt a "hard object" in the right pocket of defendant's jacket but could not tell what the object was. He suspected defendant had a handgun. When defendant started running, Pizzo observed him "attempting to grab something out of his pocket" and "holding his side like he was going to probably throw what was in his pocket," as he had thrown his wallet away. Pizzo had "seen people do that kind of gesture before" during pursuits, which made him concerned "[t]hat they have a weapon on them."

¶ 11    In closing, defendant noted that riding a bicycle on the sidewalk was "a ticketable offense," but argued the officers should not have arrested him. Defendant contended he was under arrest when the two officers "surrounded" him by approaching him from the front and back. The State argued the officers' interaction with defendant was "a lawful stop" and maintained they had "justification for a brief search."

¶ 12    The court denied defendant's motion. The court found the officers had a "right" to approach defendant "because he was riding a bicycle and he was over 12 years of age." The court reasoned the officers "putting [a] hand on" defendant "wasn't a seizure because [defendant] got away," but also concluded "there is more than a *Terry* stop right here. There's a – you know, way past articulable suspicion." The court found the officers had a right to chase defendant as "he's avoiding an arrest or obstructing an arrest."

¶ 13    At trial, Bansley testified he and Pizzo were patrolling the 8900 block of South Escabana Avenue at approximately 8:00 p.m. on November 29, 2016. Bansley was driving an unmarked police vehicle and wearing a police vest over a "fleece or jacket." Bansley noticed defendant, whom he identified in court, riding a bicycle on the sidewalk. The officers approached defendant "[b]ecause in the city of Chicago riding your bicycle on the sidewalk being over the age of 12 is a ticketable offense."

¶ 14    Defendant "became very erratic and began to walk away and then began to run away." He ran westbound toward 90th Street and the officers ran after him. Bansley observed defendant "holding his side attempting to go into his right jacket up high." Bansley ordered defendant not to reach toward his pocket. Based on Bansley's experience, he believed defendant possessed a handgun. Defendant slipped and fell, and the officers handcuffed him and "helped" him to his feet. Pizzo searched defendant's right jacket pocket and recovered a handgun, which he placed on the ground. Bansley immediately picked up the firearm and removed one round from the chamber and five rounds from the magazine. The handgun and ammunition were inventoried. Bansley identified the weapon and ammunition at trial and the State moved them into evidence. Assisting officers arrived on scene and transported defendant to the fourth district police station. At the station, police recovered eight knotted plastic baggies from defendant's pants pocket, which contained a white chalky substance suspected to be crack cocaine.

¶ 15    Bansley confirmed a video recording from his bodyworn camera accurately depicted his interactions on scene with defendant. On the video, which was entered into evidence, Bansley identified Pizzo "help[ing]" defendant up after handcuffing him, then recovering the handgun and placing it on the ground. Bansley identified himself recovering the weapon from the ground.

¶ 16    On cross-examination, Bansley testified he did not see defendant interact with anyone prior to approaching him and did not see defendant make any hand-to-hand transactions. He did not hear defendant saying, "[R]ocks, rocks," which is a street term for cocaine.

¶ 17    Pizzo testified consistent with his testimony at the hearing on defendant's motion to suppress. He identified the handgun, magazine, and ammunition he recovered from defendant.

¶ 18    On cross-examination, Pizzo testified he did not see defendant interact with any other civilians or engage in any hand-to-hand transactions, and never heard him "yelling for narcotics sales." Pizzo searched defendant "for additional weapons on scene," but "wouldn't say [that was] a custodial search."

¶ 19    An Illinois State Police forensic scientist was qualified as an expert in forensic chemistry and opined the substance recovered from defendant at the police station contained cocaine.

¶ 20    The parties stipulated defendant had previously been convicted of two qualifying offenses.

¶ 21    The jury found defendant guilty of armed habitual criminal, but acquitted him of armed violence premised on possession of a controlled substance with intent to deliver.

¶ 22    Defendant filed a motion for a new trial, which argued, *inter alia*, the trial court erred in denying his motion to suppress. The court denied this motion.

¶ 23    Defendant's presentence investigation report (PSI) reflected he was a ward from the age of six months to eight years due to abuse and neglect, and was raised primarily by his aunt and grandmother. His mother had a history of drug abuse. The PSI contained information about his educational and employment histories, establishing he earned a GED and education certificates in prison. He was previously a gang member, but left the gang while in prison. Defendant was shot

in the eye in 2014 and lost sight in one eye. The PSI also reflected defendant's treatment for mental health issues.

¶ 24    At the sentencing hearing, the State noted defendant had previously been sentenced to 15 years in prison on a 2006 armed robbery conviction and 30 years on a 1990 murder conviction. In mitigation, defendant argued "there was no physical harm done to anyone in this case." Defendant highlighted his educational and employment histories and that he had been attending church and volunteering prior to his arrest. In allocution, defendant stated he was riding his bicycle on the sidewalk because he was partially blind and he "felt it was safe." He was carrying a gun "for his own protection" as he "felt unsafe in the City of Chicago" and the person who shot him had not been arrested.

¶ 25    The court sentenced defendant to 17 years' imprisonment for armed habitual criminal. The court stated it "underst[oo]d the predicament" defendant was in but, due to his prior convictions, he was not allowed to carry a handgun even for his own protection. The court also stated it had reviewed the PSI, the statutory provisions in aggravation and mitigation, and non-statutory provisions in mitigation.

¶ 26    Defendant filed a motion to reconsider sentence, which the court denied.

¶ 27    On appeal, defendant first contends the trial court should have granted his motion to suppress the handgun. Specifically, defendant argues the officers had neither probable cause nor reasonable suspicion to search him when Pizzo recovered the gun from his jacket pocket.

¶ 28    At a hearing on a motion to suppress, the defendant has the burden to make a *prima facie* case as to whether the evidence in question was obtained by an illegal search or seizure. *People v. Brooks*, 2017 IL 121413, ¶ 22. A *prima facie* showing means a defendant has the primary

responsibility for establishing the factual and legal bases for the motion to suppress. *Id.* When the defendant alleges he was illegally searched, he must establish both that there was a search and that it was illegal. *Id.* If a defendant makes a *prima facie* case, the burden shifts to the State to present evidence to counter the defendant's *prima facie* case. *Id.* The ultimate burden of proof remains with the defendant. *Id.*

¶ 29    We review the denial of a motion to suppress using a two-part standard. *Id.* ¶ 21. We give great deference to the circuit court's findings of fact, which we reverse only if they are against the manifest weight of the evidence. *Id.* However, we give less deference to factual findings based on video evidence as, unlike live witness testimony, a trial court does not occupy a position superior to the appellate court in evaluating video evidence. *People v. Shaw*, 2015 IL App (1st) 123157, ¶ 29. We review *de novo* the issues of when an arrest occurred (see *People v. Hill*, 2012 IL App (1st) 102028, ¶ 36 ("the fact of when an arrest occurs is a legal conclusion")) and whether police had probable cause or reasonable suspicion, *i.e.*, whether the evidence in question should have been suppressed (*Brooks*, 2017 IL 121413, ¶ 21). In reviewing the trial court's ruling on a motion to suppress evidence, we consider the evidence adduced at trial as well as at the suppression hearing. *People v. Hannah*, 2013 IL App (1st) 111660, ¶ 41.

¶ 30    Both the United States Constitution and the Illinois constitution prohibit unreasonable searches and seizures by police. See U.S. Const., amend. IV; Ill. Const. 1970, art. I, § 6. A warrantless search, as occurred here, is *per se* unreasonable, subject to a few specific and well-defined exceptions. See *People v. McGhee*, 2020 IL App (3d) 180349, ¶ 31. One such exception is a search incident to a lawful arrest. *Id.* Another exception allows an officer to conduct a limited frisk to search for weapons if the officer reasonably suspects criminal activity and that the person

in question is armed and dangerous. *Arizona v. Johnson*, 555 U.S. 323, 327 (2009); *Terry v. Ohio*, 392 U.S. 1, 27 (1968); see also 725 ILCS 5/108-1.01 (West 2016). Evidence from a search that violates the Fourth Amendment cannot be used against a defendant. *Wong Sun v. United States*, 371 U.S. 471, 487-88 (1963); *People v. Wear*, 371 Ill. App. 3d 517, 527 (2007).

¶ 31 To determine whether either of these exceptions apply, we must first determine whether the search that produced the handgun occurred incident to arrest or as part of a *Terry* stop and frisk. The "essential elements of an arrest are (1) the intent of the police to make the arrest, and (2) the defendant's understanding, based on an objective standard of reasonableness, that he is in fact under arrest." *People v. Smith*, 2013 IL App (3d) 110477, ¶ 16. " 'A person has been arrested when his freedom of movement has been restrained by means of physical force or a show of authority.' " *People v. Gutierrez*, 2016 IL App (3d) 130619, ¶ 54 (quoting *People v. Melock*, 149 Ill. 2d 423, 436 (1992)). "In determining whether an arrest has occurred, we consider whether the circumstances are such that a reasonable person, innocent of any crime, would conclude that he was not free to leave." (Internal quotations and citations omitted). *Id.* "[T]he use of handcuffs to restrain the person being detained is an indication the detention is an arrest rather than a *Terry* stop." *Smith*, 2013 IL App (3d) 110477, ¶ 16.

¶ 32 We find the search that produced the firearm occurred incident to arrest. The officers chased defendant on foot and handcuffed him while he was lying on the ground. After defendant had been handcuffed, Pizzo felt a hard object in defendant's jacket pocket. He reached inside defendant's jacket pocket and retrieved the weapon. The video establishes defendant was handcuffed and physically restrained by Pizzo when this search occurred. No reasonable person in

that position would have felt free to leave. See *Gutierrez*, 2016 IL App (3d) 130619, ¶ 54. Thus, defendant was under arrest when the officers recovered the handgun.

¶ 33    As this search occurred incident to arrest, it was legally justified if the officers' arrest of defendant was lawful. See *Maryland v. King*, 569 U.S. 435, 449 (2013) ("The fact of a lawful arrest, standing alone, authorizes a search."). A warrantless arrest is lawful only if it is supported by probable cause. *People v. Grant*, 2013 IL 112734, ¶ 11. Probable cause to arrest exists when the facts known to the officer at the time of the arrest would lead a reasonably cautious person to believe the arrestee has committed a crime. *Id.* "The existence of probable cause depends upon the totality of the circumstances at the time of arrest." *Id.* Whether probable cause exists is determined by common sense considerations, and the standard is the probability of criminal activity, rather than proof beyond a reasonable doubt. *Id.* Probable cause for arrest may be based on a violation of a municipal ordinance. *Id.* ¶ 10; see also *People v. Fitzpatrick*, 2013 IL 113449, ¶ 19 ("since 1962, Illinois has consistently recognized that police are allowed to conduct a custodial search after an arrest for a traffic or petty offense.")

¶ 34    We find the officers had probable cause to arrest defendant. Under the Chicago Municipal Code, a person 12 or more years of age may ride a bicycle upon any sidewalk "only if such sidewalk has been officially designated and marked as a bicycle route, or such sidewalk is used to enter the nearest roadway, intersection, or designated bicycle path, or to access a bicycle share station." Chicago Municipal Code § 9-52-020(b) (amended Sept. 11, 2013). The officers' testimony and the video establish defendant, an adult, rode a bicycle on a sidewalk, which section 9-52-020(b) allows only under specific circumstances. Those circumstances do not appear to be present here, as defendant introduced no evidence the sidewalk in question was a designated

bicycle route or that he was using it to "enter the nearest roadway, intersection, or designated bicycle path, or to access a bicycle share station." Chicago Municipal Code § 9-52-020(b) (amended Sept. 11, 2013); see *Brooks*, 2017 IL 121413, ¶ 22 (on a motion to suppress evidence, it is defendant's burden to prove the arrest at issue was unlawful). Thus, the evidence establishes the officers observed defendant violating a municipal ordinance and, therefore, had probable cause to arrest him. See *Grant*, 2013 IL 112734, ¶ 10. As the officers had probable cause to arrest defendant, they lawfully searched him incident to arrest. *King*, 569 U.S. at 449. Accordingly, the search which produced the handgun was lawful, and the trial court correctly denied defendant's motion to suppress.

¶ 35    Defendant argues he did not violate section 9-52-020(b) as the ordinance only prohibits "multiblock" cycling. Defendant did not make this argument in the trial court. On the contrary, he conceded "riding his bike on the sidewalk" "is a ticketable offense." We cannot allow defendant to recharacterize his conduct on appeal. See *People v. Clayton*, 2014 IL App (1st) 130743, ¶ 47.

¶ 36    Moreover, defendant cites no authority for his claim section 9-52-020(b) only prohibits "multiblock" cycling. Rather, the ordinance only *allows* an adult to bicycle on a sidewalk to "enter the nearest roadway [or] intersection." Chicago Municipal Code § 9-52-020(b) (amended Sept. 11, 2013). As noted above, defendant presented no evidence he was bicycling on the sidewalk to enter the nearest intersection or roadway. It was his burden to establish the officers had no legal justification for arresting and searching him. See *Brooks*, 2017 IL 121413, ¶ 22. Defendant did not carry his burden on his motion to suppress, so the trial court correctly denied it.

¶ 37    Defendant also challenges his sentence. Specifically, he argues his 17-year sentence for armed habitual criminal is excessive as "his gun possession hurt nobody, he had turned his life around," and he had a "need for armed protection."

¶ 38    A trial court has broad discretion in sentencing. *People v. Alexander*, 239 Ill. 2d 205, 212 (2010). "A reviewing court gives substantial deference to the trial court's sentencing decision because the trial judge, having observed the defendant and the proceedings, is in a much better position to consider factors such as the defendant's credibility, demeanor, moral character, mentality, environment, habits, and age." *People v. Snyder*, 2011 IL 111382, ¶ 36. We do not substitute our judgment for the trial court's judgment merely because we might have weighed sentencing factors differently. *Alexander*, 239 Ill. 2d at 212-13. We will only modify a defendant's sentence upon a showing the trial court abused its discretion. *Snyder*, 2011 IL 111382, ¶ 36. A sentence within the statutory guidelines is presumed to be proper, and only constitutes an abuse of discretion if the sentence is greatly at variance with the spirit and purpose of the law or is manifestly disproportionate to the nature of the offense. *Id.*

¶ 39    "A sentence should reflect both the seriousness of the offense and the objective of restoring the offender to useful citizenship." *People v. Williams*, 2019 IL App (1st) 173131, ¶ 21. Thus, the trial court must consider all factors in aggravation and mitigation. *Id.* "The defendant bears the burden of making an affirmative showing that the sentencing court did not consider the relevant factors." *Id.*

¶ 40    Armed habitual criminal is a Class X felony, and the sentencing range for a Class X felony is 6 to 30 years. 720 ILCS 5/24-1.7(b) (West 2016); 730 ILCS 5/5-4.5-25(a) (West 2016). The trial court imposed a sentence of 17 years, which is within the statutory guidelines. Thus, we presume

the trial court's sentence was proper. See *Snyder*, 2011 IL 111382, ¶ 36. Defendant can only overcome this presumption by showing his sentence is greatly at variance with the spirit and purpose of the law or manifestly disproportionate to the nature of the offense. See *id.*

¶ 41    Defendant has not made such a showing. The most important factor is the seriousness of the crime. *Alexander*, 239 Ill. 2d at 214. Defendant was charged with armed habitual criminal and, as the trial court noted, his criminal history categorically prohibited him from possessing a firearm, much less a loaded firearm. Defendant's sentence was in the middle of the range for a Class X offense. We cannot say such a sentence is manifestly disproportionate to the nature of the offense in light of defendant's criminal background.

¶ 42    Defendant does not claim the trial court abused its discretion. Rather, he, *inter alia*, recites the mitigating evidence demonstrating he changed his life, and contends his criminal background, which the State and the court addressed, occurred years before this incident. As defendant points out, one factor in mitigation is that the defendant's conduct did not cause serious physical harm to another. 730 ILCS 5/5-5-3.1(a)(1) (West 2016). The trial court may also consider defendant's character, credibility, social environment, age, habits, as well as the nature and circumstances of the offense. *People v. Minor*, 2019 IL App (3d) 180171, ¶ 27. The presence of mitigating factors, however, does not require a minimum sentence and does not preclude a maximum sentence. *People v. Harmon*, 2015 IL App (1st) 122345, ¶ 123. We presume the trial court considered all of the relevant mitigating factors, and a defendant must present an affirmative record with evidence that the trial court failed to consider mitigating factors to overcome that presumption. *People v. Gordon*, 2016 IL App (1st) 134004, ¶ 51.

¶ 43    Defendant has not overcome that presumption. The trial court explicitly stated it considered the information in the PSI and the mitigating evidence, and expressed sympathy for defendant's "predicament" concerning his fear for his safety. The PSI contained information about defendant's upbringing, educational and employment histories, criminal background, and attempts to improve his life by leaving his gang and volunteering. Defendant also raised the same arguments at the sentencing hearing as he does on appeal. Thus, the trial court not only read the mitigating evidence in the PSI; it heard the mitigating evidence argued as well, and is presumed to have considered it. *People v. Sauseda*, 2016 IL App (1st) 140134, ¶ 19. Just because the court did not specifically discuss each of those factors in passing sentence does not mean the court ignored them. See *People v. Jones-Beard*, 2019 IL App (1st) 162005, ¶ 24 ("[A] sentencing court need not state every factor it considered in determining a defendant's sentence."). Defendant has failed to establish the trial court disregarded any mitigating evidence. Accordingly, we find defendant's 17-year sentence for armed habitual criminal was proper.

¶ 44    For the foregoing reasons, we affirm defendant's conviction.

¶ 45    Affirmed.